UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

WELLS FARGO BANK NATIONAL ASSOCIATION AS TRUSTEE FOR THE HOLDERS OF COMM 2014-UBS6 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES,

        Plaintiff,

    -against-

366 REALTY LLC, et al.,

        Defendants.

No.: 17-cv-3570-SJ-SMG

---

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF A RECEIVER

POLSINELLI PC

Jason A. Nagi
600 Third Avenue, 42nd Floor
New York, New York 10016
jnagi@polsinelli.com
(212) 644-2092

*Attorneys for Plaintiff*
*Wells Fargo Bank National Association as Trustee for the Holders of Comm 2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificates*

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................1

PROCEDURAL HISTORY ............................................................................................................1

FACTUAL HISTORY ....................................................................................................................2

    The Loan......................................................................................................................................2

    The Property, and Borrower's Default .......................................................................................3

ARGUMENT ..................................................................................................................................5

    I.    Legal Standard Applicable for Appointment of a Receiver.................................................5

    II.    Federal and New York Law Support Appointing a Receiver in this Case .........................6

    III.    Plaintiff Requests the Court Appoint Tom Gagliano as Receiver.................................9

CONCLUSION................................................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Avalon Orchards, Inc.*,
   118 A.D.2d 297, 505 N.Y.S.2d 216 (3d Dep't 1986) ............................................................9

*Citibank, N.A. v. Nyland (CF8) Ltd.*,
   839 F.2d 93 (2d. Cir. 1988) ................................................................................... 5, 6, 7, 8

*D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., et al.*,
   550 F. Supp. 2d 481 (S.D.N.Y. 2008) ..................................................................... 5, 6, 7

*Federal Deposit Ins. Corp. v. Vernon Real Estate Invs., Ltd.*,
   798 F. Supp. 1009 (S.D.N.Y. 1992) ............................................................................. 7, 8

*Gasco Corp. & Gordian Group of Hong Kong, Inc. v. Tosco Props. Ltd.*,
   653 N.Y.S.2d 687 (2d Dep't 1997) .....................................................................................8

*Sharp v. Bivona*,
   304 F. Supp. 2d 357 (E.D.N.Y. 2004) .................................................................................2

*Sovereign Bank v. 347 East 173 LLC et al.*,
   No. 11 Civ. 1061 (LBS), 2011 WL 2693525 (S.D.N.Y. June 29, 2011) ..................... 5, 6, 7, 8

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*,
   866 F. Supp. 2d 247 (S.D.N.Y. 2012) .................................................................................4

**Statutes**

N.Y. Real Property Law § 254 .............................................................................................5, 6

**Other Authorities**

12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983
   (1999) .................................................................................................................................5

Rule of Civil Procedure 66 ........................................................................................................4

Federal Rule of Civil Procedure 64 ...........................................................................................5

## INTRODUCTION

On November 6, 2014, Defendant 366 Realty LLC ("**Borrower**"), borrowed $2,200,000.00 from the predecessor-in-interest of Plaintiff (defined below) to finance the purchase of an apartment building consisting of both residential units and commercial units. The property is located at 366 Knickerbocker Avenue, Brooklyn, New York (the "**Property**"). Less than two years after the origination of the loan (the "**Loan**"), in early 2016, Borrower failed to deposit all rents from the Property into the requisite clearing accounts as required under the Loan Documents (defined below). Further, Borrower failed to remit all Excess Cash[1] to Plaintiff, failed to deliver outstanding financial statements to Plaintiff, and executed a lease at the Property without Plaintiff's prior review and consent as required under the Loan Documents. These defaults continued for more than a year and Plaintiff, and Plaintiff's predecessor in interest, sent numerous demand letters to Borrower demanding cure of the outstanding defaults under the Loan Documents. In addition, Borrower further defaulted by failing to make its full monthly debt service payments on the Loan for the months of December of 2016, and February and March of 2017.

Borrower has continued to collect rents from his tenants, which is Plaintiff's collateral. As a result of Borrower's failure to provide Plaintiff with outstanding financial statements, its failure to deposit rents into the requisite clearing account, and failure to remit Excess Cash to Plaintiff, Borrower's use of rents that are rightfully the collateral of Plaintiff, a receiver should be appointed to manage the Property during the pendency of this litigation.

## PROCEDURAL HISTORY

---

[1] Excess Cash is defined the Loan Agreement as all amounts remaining after payment of money toward certain categories of payments under Section 2.7.2(b) of the Loan Agreement.

On June 13, 2017, Plaintiff Wells Fargo Bank National Association as Trustee for the Holders of Comm 2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificates ("**Plaintiff**" or "**Lender**") filed a summons and complaint and commenced this commercial foreclosure action. (A copy of the summons and Complaint is attached to the Declaration of Steven Taylor in Support of Plaintiff's Motion for the Appointment of a Receiver (the "**Taylor Decl.**") as Exhibit A.)

Borrower was served with the summons and Complaint on June 21, 2017. Borrower has not yet filed an answer. Defendant Modern MD Management Services LLC filed its Answer on July 26, 2017. The remaining Defendants have failed to answer or otherwise respond.

## FACTUAL HISTORY

### The Loan

On or about November 6, 2014, Borrower signed and delivered to Cantor Commercial Real Estate Lending, L.P. ("**Original Lender**") that certain Gap Note (as amended from time to time, the "**Gap Note**"), dated as of November 6, 2014, in the original principal amount of $822,669.42 (the "**Gap Loan**"). (Taylor Aff. at ¶ 4)

The indebtedness owed under the Gap Note was secured by the Property, as evidenced by that certain Gap Mortgage, Assignment of Leases and Rents and Security Agreement (the "**Gap Mortgage**"), signed by Borrower and delivered for the benefit of Original Lender. (Taylor Aff. at ¶ 5).

On or about November 6, 2014, Borrower entered into the certain loan transaction with Original Lender, as evidenced by that certain Loan Agreement (the "**Loan Agreement**"), dated as of November 6, 2014. (Taylor Aff. at ¶ 6).

Borrower signed and delivered to Original Lender, that certain Amended, Restated and Consolidated Promissory Note attached thereto (as amended from time to time, collectively, the "**Note**"), dated as of November 6, 2014, in the original principal amount of $2,200,000.00 (the "**Loan**"). (Taylor Aff. at ¶ 7).

The Gap Note was combined with, consolidated, and restated, by the Note. The indebtedness owed under the Note is secured by the Property, as evidenced by a certain Mortgage, Security Agreement and Assignment of Leases and Rents dated as of July 13, 2006 (the "**Original Mortgage**"), signed by Borrower for the benefit of North Fork Bank ("**North Fork**"). (Taylor Aff. at ¶ 6).

The Note, the Mortgage, and all other documents further evidencing, securing or executed in connection with the debt owed under the Note, all of which are referred to herein collectively as the "**Loan Documents**," have been assigned to Lender. Lender is the owner and holder of the Loan Documents. (Taylor Aff. at ¶ 8)

### The Property, and Borrower's Default

The Property is a mixed use residential and commercial property. (Taylor Aff. at ¶ 9). According to a rent roll delivered to Plaintiff, the approximate monthly rental income for the Property as of 2015 was $17,900.00. (Taylor Aff. ¶ 10).

Lender has repeatedly notified Borrower that it was in default under the Loan for failure to have all rents deposited into the requisite clearing account, failure to remit all Excess Cash, as that term is defined in the Loan Documents, to Plaintiff, failure to deliver outstanding financial statements to Plaintiff, execution of a lease at the Property without Plaintiff's prior review and consent, and failure to make monthly debt payments under the Loan as and when due. (Taylor Aff. ¶¶ 11-12).

3

By letter dated February 19, 2016 (the "**First Default Letter**"), Plaintiff notified Borrower that it was in default under the Loan for failure to have all rents deposited into the requisite clearing account, failure to remit all Excess Cash to Plaintiff, failure to deliver outstanding financial statements to Plaintiff, and execution of a lease at the Property without Plaintiff's prior review and consent.  (Taylor Aff. ¶ 13).

By Letter dated April 20, 2016 (the "**Second Default Letter**"), Plaintiff notified Borrower that it was in default under the Loan for the same reasons specified in the First Default Letter.  (Taylor Aff. at ¶ 14).

By Letter dated July 21, 2016 (the "**Third Default Letter**"), Plaintiff once again notified Borrower that it was in default under the Loan for the same reasons specified in the First Default Letter and Second Default Letter.  (Taylor Aff. ¶ 15).

By Letter dated August 11, 2016 (the "**Fourth Default Letter**"), Plaintiff once again notified Borrower that it was in default under the Loan for the same reasons specified in the First Default Letter, Second Default Letter, and Third Default Letter.  (Taylor Aff. ¶ 16).

By Letter dated January 19, 2017 (the "**Fifth Default Letter**"), through its counsel, Plaintiff once again notified Borrower that it was in default under the Loan for the same reasons specified in the First Default Letter, Second Default Letter, Third Default Letter, and Fourth Default Letter (collectively, the "**Default Letters**").  In addition, the Fifth Default Letter notified Borrower that it had failed to make the monthly payments for the month of December 2016.  (Taylor Aff. ¶ 17).

As a result of the defaults, the Note was accelerated on April 3, 2017.  (Taylor Aff. ¶ 18). In connection with the acceleration counsel for Plaintiff notified Borrower by letter dated April 3, 2017 ("**Acceleration Letter**"), that the Loan had been accelerated due to Borrower's failure to

4

cure the defaults referenced in the Default Letters. In addition the Acceleration Letter notified Borrower of its failure to make the monthly debt service payments for the months of February and March, 2017. (Taylor Aff. ¶ 19).

Section 7.1(g) of the Mortgage states: "Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may … apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt…" (Taylor Aff. ¶ 20). As a result of the Borrower's abject failure to manage the property and comply with its obligations under the Mortgage and other loan documents, Plaintiff requests that the court appoint a receiver. (Taylor Aff. ¶ 21).

## ARGUMENT

### I. Legal Standard Applicable for Appointment of a Receiver

Federal law generally applies to the appointment of a receiver in a diversity action. *See* Fed. R. Civ. P. 66 ("These rules govern an action in which appointment of a receiver is sought"); *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) ("whether a federal court should appoint a receiver in a diversity action is governed by federal law"); 12 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (1999). Nevertheless, a federal court may invoke a New York state statute when appointing a receiver pursuant to Federal Rule of Civil Procedure 64, which states that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. Indeed, federal courts have relied in part on N.Y. Real Property Law § 254 when appointing receivers. *See, e.g.*, *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93 (2d. Cir. 1988) (relying in part on RPL § 254 when appointing a receiver); *Sovereign Bank v. 347 East 173 LLC et al.*, No. 11 Civ. 1061 (LBS)

(Judge Sand), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (citing RPL § 254 when appointing a receiver). That statute states:

> A covenant 'that the holder of this mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver,' must be construed as meaning that the mortgagee, … in any action to foreclose the mortgage, shall be entitled, without notice and without regard to adequacy of any security of the debt, to the appointment of a receiver of the rents and profits and of the premises covered by the mortgage ….

In any event, federal common law and New York law have substantially similar standards governing whether to appoint a receiver. *See D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., et al.*, 550 F. Supp. 2d 481, 489 (S.D.N.Y. 2008). Accordingly, the Court need not conclusively determine whether state or federal law applies because "in practice the [federal and state] standards for appointment are likely to be essentially the same." *Id.* (quoting Wright & Miller § 2983)). In this case, regardless of which law the Court applies, a receiver is warranted and necessary.

## II. Federal and New York Law Support Appointing a Receiver in this Case

Courts appoint receivers in foreclosure cases in order to "protect the interests in the property" that secures the loan. *Sovereign Bank*, 2011 WL 2693524, at *3. In *Nyland*, the Second Circuit relied on both federal and New York law in holding that "[i]t is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default." *Nyland*, 829 F.2d at 97 (citing New York Real Property Law § 254 (10)). Referring to the *Nyland* decision, the Southern District of New York later held: "In the context of mortgage agreements, the Second Circuit Court of Appeals has affirmed the appointment of a receiver where the agreement provided that plaintiff may apply for such appointment upon the occurrence of any event of default, as defined therein."

6

*See D.B. Zwirn*, 550 F. Supp. 2d at 490-91.[2] The *D.B. Zwirn* court further held that a contractual provision allowing the lender to seek appointment of a receiver "is a factor the court considers in deciding whether appointment is warranted." *Id.* at 490.

In *Nyland* the mortgagee accelerated the loan and moved for the appointment of a receiver, relying on a mortgage provision providing for the appointment of a receiver upon default. *Nyland*, 829 F.2d at 95. The Second Circuit upheld the District Court's appointment of a receiver, cited New Real Property Law § 254(10), and held that, although a mortgage provision providing for the appointment of a receiver upon default does not create an automatic right to a receiver, it "strongly supports the appointment of a receiver." *Id.*

In *Sovereign Bank*, the borrowers violated "multiple non-monetary covenants set forth in the Loan Documents…." *Sovereign Bank*, 2011 WL 2693525, at *1. The court appointed a receiver based on the parties' agreement that a receiver could be appointed upon the borrowers' default, and further supported its decision by citing evidence that the borrowers failed to make the debt and tax payments, and diverted rents. *Id.* at *3.

Other federal courts in New York have similarly recognized the propriety of appointing a receiver, especially where, as here, the entire amount of the loan is due. *See Federal Deposit Ins. Corp. v. Vernon Real Estate Invs., Ltd.*, 798 F. Supp. 1009, 1013 (S.D.N.Y. 1992) (appointing receiver after loan had been accelerated). The *Vernon* court, relying on New York law, held that, "where the mortgagor has defaulted, the mortgagee has accelerated the entire debt pursuant to the mortgage, and full payment has not been tendered, proof of the necessity of a receiver is not required." *Id.* at 1013. The court made clear that, in such circumstances, "it is incumbent upon

---

[2] The *D.B. Zwirn* court remanded the case to state court, and therefore did not actually order the appointment of a receiver. Instead, the court suggested that the state court should appoint a receiver, and provided support for that suggestion.

7

defendants to demonstrate why a receiver should not be appointed . . . *and proof of necessity of a receiver is not required.*" *Id.* at 1012-13 (emphasis added).

In this case, the facts merit appointing a receiver for several reasons. First, as in *Nyland*, *Sovereign Bank* and *D.B. Zwirn*, Borrower in this case expressly agreed to the *ex parte* appointment of a receiver pursuant to the terms of the Mortgage upon an event of default. There is no dispute that Borrower is in default as a result of its failure to deposit all rents into the requisite clearing account, failure to remit all Excess Cash to Plaintiff, execution of a lease at the Property without Plaintiff's prior review and consent, and failure to make monthly debt payments under the Loan as and when due. This Court should therefore follow the holdings in *Nyland* and *Sovereign Bank*, and appoint a receiver. Moreover, under the *Vernon* holding, now that the full amount of the Loan is due, the Court need not even consider whether a receiver is necessary to protect the property. Plaintiff is presumed to be entitled to the appointment of a receiver. At a minimum, the circumstances of this case shift the burden to Borrower to establish that the appointment of a receiver would be inequitable.

Second, even if Plaintiff was required to prove that a receiver is necessary to protect its collateral, that necessity is evidence. Plaintiff's collateral for the Loan is in imminent danger of being lost, materially injured or diminished in value, or squandered. In this case, Plaintiff has a vested interest in ensuring that income and profits generated by the Property are used to its benefit: to pay the accelerated debt amount, which, as it remains unpaid, continues to accrue interest and default interest eroding Plaintiff's collateral position in the Property, and to be utilized for other proper purposes, thus ensuring that such income and profits are not improperly diverted or subject to waste. The Court should appoint a receiver to ensure that the Property is

8

being used to generate rents and that those rents are being used to repay Borrower's indebtedness to Plaintiff.

Third, without a receiver, Plaintiff will be effectively prohibited from enforcing its assignment of leases and rents clause in the Mortgage. Plaintiff cannot reasonably be expected to collect the rents directly when doing so could impose on Plaintiff various liabilities as a mortgagee-in-possession.[3] Plaintiff is entitled to obtain possession of the rents, and the only reasonable method for doing so is through a receiver.

### III. Plaintiff Requests the Court Appoint Tom Gagliano as Receiver

Appointment of a receiver is allowed and warranted under the express terms of the Mortgage, under New York law, and by the Court's equitable power to protect the property securing Plaintiff's Loan. Plaintiff respectfully requests that the Court appoint Tom Gagliano to serve as receiver. Mr. Gagliano is eligible and registered to serve as receiver and managing agent in this District. It is requested that no undertaking be required. (Taylor Aff. at ¶ 22). The appointment of a receiver to manage the Property during the pendency of this litigation is appropriate. Mr. Gagliano is more than qualified to act as the receiver in this case.

### CONCLUSION

Borrower continues to collect the rents and profits from the Property, which is Plaintiff's collateral. Accordingly, appointment of a receiver to manage the Property during the pendency of this litigation is appropriate. In order to protect the lien of Plaintiff's Mortgage and Plaintiff's interest in the Property and in the income derived therefrom and appoint Tom Gagliano to act as

---

[3] *See Gasco Corp. & Gordian Group of Hong Kong, Inc. v. Tosco Props. Ltd.*, 653 N.Y.S.2d 687, 689-90 (2d Dep't 1997) (noting that mortgagee-in-possession collects rent in fiduciary capacity and may be liable for mismanagement or negligence); *see also Aetna Life Ins. Co. v. Avalon Orchards, Inc.*, 118 A.D.2d 297, 505 N.Y.S.2d 216, 218-19 (3d Dep't 1986) (noting that mortgagee-in-possession has duty to expend funds to preserve property and that action for waste may be brought against a mortgagee-in-possession).

receiver to collect rents and profits and to make necessary disbursements in connection with the maintenance of the Property.

Dated: New York, New York
       October 30, 2017

                                      POLSINELLI PC

                       By: */s/ Jason A. Nagi*
                           Jason A. Nagi
                           600 Third Avenue, 42nd Floor
                           New York, New York 10016
                           (212) 644-2092
                           jnagi@polsinelli.com

                           *Attorneys for Plaintiff*
                           *Wells Fargo Bank National Association*
                           *as Trustee for the Holders of Comm*
                           *2014-UBS6 Mortgage Trust Commercial*
                           *Mortgage Pass-Through Certificates*