UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WELLS FARGO BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR THE HOLDERS OF COMM 2014-
UBS6 MORTGAGE TRUST COMMERCIAL
MORTGAGE PASS- THROUGH CERTIFICATES, BY
AND THROUGH ITS SPECIAL SERVICER, LNR
PARTNERS LLC,

                              Plaintiff,

        v.

366 REALTY LLC; JOSHUA MIZRAHI; CRIMINAL
COURT OF THE CITY OF NEW YORK; NYC
ENVIRONMENTAL CONTROL BOARD; NEW
YORK CITY DEPARTMENT OF FINANCE; KASSIN
SABBAGH REALTY LLC, and "JOHN DOE NO. I" to
"JOHN DOE NO. X," the last ten names being fictitious
and unknown to plaintiff, the persons or parties intended
being the tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon the
premises described in the first amended complaint,

                              Defendants.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

17-CV-3570
(Matsumoto, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

      Plaintiff Wells Fargo Bank National Association as Trustee for the Holders of COMM

2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificates, by and through its

special servicer, LNR Partners LLC ("Plaintiff") brought this foreclosure action against

Defendants 366 Realty LLC ("Borrower"); Joshua Mizrahi; Criminal Court of the City of New

York; NYC Environmental Control Board; New York City Department of Finance; Kassin

Sabbagh Realty LLC; and John Doe No. I to John Doe No. X.[1] *See* Dkt. No. 70 ("Am. Compl.").

---

[1] On December 7, 2023, the Clerk of the Court entered a certificate of default against Defendants Criminal
Court of the City of New York, Kassin Sabbagh Realty LLC, Joshua Mizrahi, NYC Environmental Control

On March 16, 2021, the Court granted Plaintiff's motion for summary judgment against Borrower and denied Plaintiff's motion to appoint a receiver.  *See* Dkt. No. 58; *see also Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, 2021 WL 9494173 (E.D.N.Y. Mar. 16, 2021) (Johnson, J.).

Currently pending before this Court, upon referral from the Honorable Kiyo A. Matsumoto, United States District Judge, is Plaintiff's Motion to Fix the Indebtedness.  *See* Dkt. No. 87 ("Pl. Mot.").[2]  For the reasons set forth below, this Court respectfully recommends that Plaintiff's Motion be granted in part.

## I.    Background

### A.    Factual Allegations

On November 6, 2014, Borrower executed a loan agreement (the "Loan Agreement"), obtaining a loan (the "Loan") for $2,200,00 from Cantor Commercial Real Estate Lending, L.P. (the "Original Lender").  Am. Compl. ¶ 14; Am. Compl., Ex. C.  In addition, Borrower signed and delivered an Amended, Restated, and Consolidated Promissory Note (the "Note").  Am. Compl. ¶ 15; Am. Compl., Ex. D.  The indebtedness owed under the Note is secured by the property at 366 Knickerbocker Avenue, Brooklyn, New York 11237 (the "Property"), as outlined in the Mortgage, Security Agreement and Assignment of Leases and Rents ("Original Mortgage").  Am. Compl. ¶ 23; Am. Compl., Ex. E.  As a further source of repayment for the obligations owed by Borrower, including its obligations under the Note, Borrower executed an Assignment of Leases and Rents (the "ALR").  Am. Compl. ¶ 27; Am. Compl. Ex. 27.

---

Board, and New York City Department of Finance.  *See* Dkt. No. 7.  To date, Plaintiff has not filed a motion for default judgment with respect to these defendants.

[2] The referral was made to then-United States Magistrate Judge Ramon E. Reyes, Jr.  Upon Judge Reyes's appointment as a United States District Judge, the matter was re-assigned to the undersigned.

In December 2014, the Original Lender assigned and transferred all rights, title, and interest in the Loan Agreement, Note, ALR, and Mortgage (collectively, the "Loan Documents") to Plaintiff.  Am. Compl. ¶ 30; Am. Compl., Ex. K.

**B.    Procedural History**

Plaintiff filed the foreclosure action in June 2017.  Dkt. No. 1.  It moved to appoint a receiver in March 2018.  Dkt. No. 33.  Plaintiff moved for summary judgment in July 2019, which Borrower opposed.  Dkts. No. 41, 45.  On March 16, 2021, the Court issued a Memorandum and Order granting Plaintiff's motion for summary judgment.  *See Wells Fargo  Bank Nat'l Ass'n*, 2021 WL 9494173.

In its Memorandum and Order, the Court addressed three issues, namely, whether: (1) Plaintiff had standing before the Court; (2) summary judgment should be granted, and (3) a receiver should be appointed.  *See id.*  First, the Court found that because Plaintiff "is both the holder and the assignee of the Note," it "thereby has standing to foreclose." *Id.* at *2.  Second, the Court held that Plaintiff "established a *prima facie* case for summary judgment by submitting to the Court the documentary evidence of the mortgage, the Note, and the notices of defaults as exhibits." *Id.* at *3.  Although Borrower claimed that it did not default, the Court determined that it failed to produce any evidence to overcome Plaintiff's *prima facie* entitlement to foreclosure. *Id.* at *4.  The Court further found Borrower's argument that it had not received a notice of default "without merit" because Borrower waived notice in the loan documents, and a commercial mortgage is not entitled to statutory notice of default.  *Id.* at *4.

Lastly, the Court held that Plaintiff failed to establish that the "drastic relief" of a receivership was necessary; "[b]ecause the Court is granting the motion for summary judgment, Plaintiff is entitled to possession of the property once it forecloses on the mortgage." *Id.* at *5.

3

On May 26, 2021, the Honorable Ramon E. Reyes, then-United States Magistrate Judge, directed the parties "to work together and try stipulating to what is owed or file a motion and an opposition regarding calculation of damages, fees and costs."  *See* May 26, 2021 Minute Entry. After the parties were unable to stipulate to an amount, a briefing schedule was set.  *See* Mar. 28, 2023 Minute Entry and Order.  On April 19, 2023, Plaintiff filed an Amended Complaint to streamline the parties in the action.  *See* Am. Compl.  Subsequently, on July 21, 2023, Plaintiff filed the current motion for damages to fix indebtedness, along with Borrower's opposition (Dkt. No. 87-14 ("Opp.")) and Plaintiff's reply (Dkt. No. 87-25 ("Pl. Reply")).

## II.    <u>Legal Standard</u>

"In general, a mortgagee has a 'presumptive right to collect' on a mortgage upon proving the two critical elements of a foreclosure action: (1) the existence of an obligation secured by a mortgage and (2) the mortgagor's default on that obligation."  *CIT Bank, N.A. v. Donnatin*, No. 17-CV-2167 (ADS) (AKT), 2020 WL 248996, at *2 (E.D.N.Y. Jan. 16, 2020) (citing *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)); *see also Builders Bank v. Rockaway Equities, LLC*, No. 08-CV-3575 (MDG), 2011 WL 4458851, at *5 (E.D.N.Y. Sept. 23, 2011) ("A mortgagee who establishes its entitlement to foreclosure has a presumptive right to collect.") (citations omitted).

The total calculation of damages "should be determined under the terms of the . . . governing instruments"—the  Loan Documents here.[3]  *See Builders Bank*, 2011 WL 4458851, at *5; *see also Vermont Teddy Bear Co. Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004)

---

[3] The parties do not dispute that New York law applies to the interpretation of the Loan Documents.  *See, e.g.*, *Sarkees v. E.I. Dupont De Nemours and Company*, 15 F.4th 584, 588 (2d Cir. 2021) (holding that a court sitting in diversity applies state law to substantive issues and federal law to procedural issues) (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)); *see also Wells Fargo Bank Nat'l Ass'n*, 2021 WL 9494173, at *2 (noting application of New York law to this litigation).

("when parties set down their agreement in a clear, complete document, their writing . . . should be enforced according to its terms.") (quotations omitted). "It is the role of the courts to enforce the agreement made by the parties—not to add, excise or distort the meaning of the terms they chose to include, thereby creating a new contract under the guise of construction." *NML v. Republic of Argentina*, 17 N.Y.3d 250, 259-60 (2011) (citations omitted). These principles are especially appropriate when a case involves the "interpretation of documents drafted by sophisticated, counseled parties and involving the loan of substantial sums of money." *Id.*

In support of its request for damages, Plaintiff has submitted the Loan Documents and the Affidavit of Ana G. Nunez (Dkt. No. 87-3 ("Nunez Aff.")), an Asset Manager at LNR Partners LLC ("LNR"), the special servicer for the Loan. Nunez Aff. ¶¶ 1, 12. In opposition, Borrower submits the Affidavit of Joshua Mizrahi (Dkt. No. 87-15 ("Mizrahi Aff."), the managing member of Borrower, along with several annexed exhibits. In reply, Plaintiff submits the supplemental Affidavit of Ana G. Nunez (Dkt. No. 87-26 ("Nunez Supp. Aff.")), with exhibits.

## III.    Discussion

### A.    Adequacy of Plaintiff's Affidavit

Borrower contends that the Nunez Affidavit and supporting exhibits submitted in support of Plaintiff's motion for damages are inadmissible hearsay, as Plaintiff failed to establish that Nunez has personal knowledge of Plaintiff's business practices and procedures or that the records were incorporated into her own records as business records.[4] *See* Opp., at 5. In support of its

---

[4] Defendant also asserts that Plaintiff relies on a default occurring August 6, 2016 but provides no documentation demonstrating that such default was noticed to the borrower. Opp., at 6. These issues were already decided in the Court's Memorandum and Order granting summary judgment. *See Wells Fargo Bank Nat'l Ass'n*, 2021 WL 9494173, at *2-4. Accordingly, Plaintiff need not re-establish a *prima facie* case for default nor whether it provided proper notice to Defendant regarding the default. Further, Plaintiff provides a complete loan history and accounting. Nunez Aff., Ex. H. Defendant does not offer any evidence that disputes the date of default.

argument, Borrower relies on the New York Second Department case, *Bank of N.Y. Mellon v. Gordon*, 97 N.Y.S.3d 286 (2d Dep't 2019).  *See Opp.*, at 5.  There, the court held that the "mere filing of papers received from other entities" is "insufficient to qualify the documents as business records," and those records are only admissible "if the recipient can establish personal knowledge of the maker's business practices and procedures, or establish that the records provided by the maker were incorporated into the recipient's own records and routinely relied upon by the recipient in its own business." *Gordon*, 97 N.Y.S.3d at 209.  In response, Plaintiff argues that it sufficiently laid the foundation for the business record exception to hearsay, relying on the same case.  *See* Pl. Reply, at 3 (citing *Gordon*, 97 N.Y.S.Sd at 296).

*Gordon*, however, does not apply here.  The admissibility of hearsay is a procedural issue, so the Federal Rules of Evidence apply, not New York law.  *Sarkees*, 15 F.4th 584 at 588 ("it has been clear, at least since *Hanna v. Plumer*, 380 U.S. 460 (1965), that '[w]hen a situation is covered by one of the Federal Rules[,] the court has been instructed to apply the Federal Rule' unless the rule violates the Rules Enabling Act or constitutional restrictions."); *De Larancuente v. Am. Airlines, Inc.*, No. 18-CV-4939 (NG)(RER), 2022 WL 2239556, at *3 (E.D.N.Y. June 22, 2022) (holding that the admissibility of testimony is a procedural issue governed by the Federal Rules of Evidence); *cf. Rand v. Volvo Fin. N. Am., Inc.*, No. 04-CV-349 (DLI) (KAM), 2007 WL 1351751, at *13 (E.D.N.Y. May 8, 2007) ("[a]s an action removed to federal court, federal procedural and evidentiary law apply.").  Federal Rule of Evidence 803(6) provides a "business records exception" to the rule against hearsay and allows the admission of records "kept in the course of a regularly conducted activity."  Fed. R. Evid. 803(6).  So long as the records are both integrated into a company's records and relied on in that company's day-to-day activities, then "[e]ven if the document is originally created by another entity, its creator need not testify when the document

has been incorporated into the business records of the testifying entity." *United States v. Jakobetz*, 955 F.2d 786, 801 (2d Cir. 1992); *see also United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014).

Here, Nunez's Affidavit and the attached documents can properly be considered by the Court because the affidavit lays sufficient grounds for their admissibility. Nunez is an Asset Manager at LNR and states that she has personal knowledge of LNR's business recordkeeping practices and procedures. Nunez Aff. ¶ 1. Nunez avers that:

> [i]n accordance with LNR's routine business practices, upon the servicing of the Loan being assigned to LNR, the Lender's Business Records pertaining to the loan were provided to LNR and incorporated into LNR's own business records, and LNR routinely relies upon such records in the ordinary course of its day-to-day business as special servicer.

*Id.* ¶ 3. Nunez also declares that she has personal knowledge of the facts and circumstances of the Loan and corresponding agreements and has worked on the books, records, and files. *Id.* ¶ 2. She goes on to explain the history of the loan and attaches exhibits in support of her knowledge of the facts and circumstances of the case. *See generally* Nunez Aff. These statements are sufficient for admission under Federal Rule of Evidence 803(6).[5] *See, e.g.*, *Wells Fargo Bank v. Prince 26, LLC*, No. 22 Civ. 5586 (PAE) (OTW), 2023 WL 5152420, at *6-7 (S.D.N.Y. Aug. 10, 2023) (finding a declaration sufficient under 803(6) when the declarant attested that he was familiar with the special servicer's record-keeping practices and procedures, that he conducted a review of the business records, and that all of the attached exhibits were true and correct copies of the business

---

[5] Even if, *arguendo*, New York law did apply, Plaintiff has established that "the records provided by the maker were incorporated into the recipient's own records and routinely relied upon by the recipient in its own business," *see Gordon*, 97 N.Y.S.Sd at 296, such that the records would also be admissible under CPLR § 4518(a), New York's business records statute. *See Bank of Am., N.A. v. Bloom*, 202 A.D.3d 736, 162 (2d Dep't 2022) (holding that loan servicer established foundation for admissibility of loan records with testimony that records were received from plaintiff, incorporated into loan servicer's files, and regularly relied on by loan servicer in its own business).

records); *CIT Bank N.A. v. Elliott*, No. 15-CV-4395 (JS) (ARL), 2019 WL 4439347, at *1 (Sept. 17, 2019) (same). Accordingly, Nunez's affidavits and the attached exhibits are admissible in support of Plaintiff's motion.

### B.    Damages Calculation

Plaintiff seeks a damages award totaling $3,774,146.76,[6] as of July 31, 2023, exclusive of attorneys' fees and costs. *See* Pl. Reply, at 2, n.4. According to Plaintiff, this figure represents the sum of the: (1) unpaid principal in the amount of $2,071,999.91; (2) contract interest in the amount of $528,315.34; (3) default interest in the amount of $741,227.18; (4) late fees in the amount of $109,595.84; (5) reimbursement of advances in the amount of $140,350.30; (6) interest on advances in the amount of $84,667.48; (6) financial statement fees in the amount of $35,000.00; (7) liquidation fees in the amount of $29,853.39; and (8) servicer fees in the amount of $33,852.76, minus a credit for $715.45. *See id.* Borrower argues that the "amounts due on the Mortgage herein be limited to the unpaid principal balance, interest at the contract rate, and advances for taxes and insurance occurring offer maturity, along with such other and further relief as this Court deems proper." Opp., at 8.

### 1.    Principal

The parties do not dispute the outstanding principal amount owed by Borrower under the Loan Documents. Nunez Aff. ¶ 25; Mizrahi Aff. ¶ 24. According to both Plaintiff and Borrower, the outstanding principal, as of March 6, 2023, the date in which Plaintiff filed the instant motion, was $2,071,999.91. *Compare* Nunez Aff. ¶ 25 with Mizrahi Aff. ¶ 24. In support of this number, Plaintiff provided an accounting of all monies applied to the Loan, which establishes the

---

[6] In its motion, Plaintiff states that it is seeking "$3,774,146" and omits the 46 cents *See* Pl. Reply, at 2. This appears to be a mathematical error.

outstanding balance and shows that Borrower first defaulted on its payments on August 6, 2016 and never came current.  Nunez Aff. ¶ 19; Nunez Aff., Ex. H, at 3, 7.

Accordingly, this Court respectfully recommends that Plaintiff be awarded the unpaid principal amount owed under the Loan Documents in the amount of $2,071,999.91.

## 2.    Contract Interest

Plaintiff seeks interest on the outstanding principal balance at the "Interest Rate."  Nunez Aff. ¶ 26.  Borrower concedes the applicability of the Interest Rate (Mizrahi Aff. ¶ 32) and does not dispute the calculations provided by Plaintiff.

Under the terms of the Loan Agreement, the Interest Rate is 5.817% per annum.[7]  *See* Nunez Aff. ¶ 26; Nunez Aff., Ex. A., at 10.  Under Section 2.2.2 of the Loan Agreement, to calculate interest on the outstanding principal balance, the Lender shall calculate the daily rate pursuant to the applicable interest rate (the Interest or Default Rate) for a 360-day year on the outstanding principal balance, and then multiply the calculated daily rate by the number of days elapsed.  Nunez Aff. ¶ 26; Nunez Aff., Ex. A., at 27.

According to the calculations submitted by Plaintiff, which apply the above formula, the contract interest, as of July 31, 2023, totaled $528,315.54.  Pl. Reply, at 5.  Contract interest also continues to accrue at a per diem of $334.80.  Nunez Aff. ¶ 26.

Accordingly, this Court respectfully recommends that Plaintiff be awarded the total contract interest accrued at the Interest Rate, namely $528,315.54.

---

[7] Defendant incorrectly states that the interest rate is 5.871%. Mizrahi Aff. ¶ 24. The Court assumes this is a typographical error. *See* Nunez Aff., Ex. A, at 10.

### 3.    Default Interest

Plaintiff also seeks default interest at the "Default Rate," which the Loan Agreement defines as the lesser of the maximum interest rate permitted by law, or 10.817% per annum.  Nunez Aff. ¶27; Nunez Aff., Ex. A, at 5.  This is an increase of 5% above the contract Interest Rate. Nunez Aff., Ex. A, at 5.  In other words, upon the event of default, the interest accruing on the outstanding principal balance increases by five percent for the continuation of the default.

Here, Plaintiff seeks default interest for the period beginning on August 6, 2016.  Nunez Aff. ¶ 27.  According to the calculations submitted by Plaintiff, as of July 31, 2023, the total default interest accrued at the Default Rate was $741,227.18.  Pl. Reply, at 7.  Default interest continues to accrue at a per diem of $287.78.  Nunez Aff. ¶ 28.

Borrower argues that the Court should, in an exercise of its equitable authority, decline to grant some or all of the Default Rate for a variety of reasons.  Mizrahi Aff. ¶ 25.  First, Borrower claims that Plaintiff engaged in wrongful conduct by losing or misapplying payments in 2015 and then demanding late fees.[8]  Opp., at 7; Mizrahi Aff. ¶ 14.  But those possible mishaps are irrelevant because Plaintiff only seeks late fees related to 2016.  Nunez Aff. ¶ 29.  Further, any potential misapplied payments were remedied.  Nunez Supp. Aff. ¶¶ 7-10; Nunez Aff., Ex. H.  Borrower also states that it issued a check in August 2016, but that Plaintiff deemed the payment late "due to *de minimus* or non-existent delays," resulting in the default.  Mizrahi Aff. ¶ 21.  The check in question, however, did not cover the amount owed at the time, so default occurred.  Nunez Supp. Aff. ¶ 14.

Next, Borrower argues that Plaintiff is not entitled to default interest because it improperly billed Borrower for lockbox usage during a time when Plaintiff suspended the lockbox

---

[8] In addition, Defendant again argues that it was improperly notified of the default (Opp.., at 7), but the issue regarding proper notification was ruled on in summary judgment.  *See* Summ. J., at 10.

arrangement.  Opp., at 7; Mizrahi Aff. ¶ 16.  Borrower claims that on September 22, 2015, Plaintiff sent Borrower a notice that it would no longer offer the lockbox arrangement for Loan Payments but nonetheless continued to charge Borrower each month for the lockbox.  Mizrahi Aff ¶ 16; Mizrahi Aff., Ex. F.  According to Plaintiff, however, it stopped billing Borrower for the lockbox in September 2015 and did not resume the charges until March 2016, when Borrower signed a new Deposit Account Control Agreement and opened a new lockbox.  Pl. Reply, at 10; Dkt. No. 32-1 ¶¶ 10–17.  Even so, "to help simplify and resolve the matter," Plaintiff is willing to credit Borrower for the lockbox charges, as explained below.  *See* Pl. Reply, at 10; *see* Section III(B)(9) *infra*. Accordingly, this Court does not view Borrower's lockbox-related allegations as sufficiently wrongful conduct to warrant mitigating the default interest.

Third, Borrower asserts that Plaintiff changed counsel multiple times, causing litigation delays for which Borrower should not have to pay interest.  Mizrahi Aff. ¶ 25.  Plaintiff's first motion to substitute attorneys occurred on January 29, 2021, which was approved the same day.  *See* Jan. 29, 2021 Order.  Less than two weeks later, on February 11, 2021, both attorneys appeared for a telephone conference.  *See* Feb. 11, 2021 Minute Entry.  Plaintiff's second motion to substitute attorneys occurred on November 28, 2022, which was also granted on the same day.  *See* Nov. 28, 2022 Order.  The parties were then scheduled for a telephone conference on February 16, 2023, until Borrower requested an adjournment until early March.  *See* Feb. 6, 2023 Dkt. Order; *see also* Dkt. No. 67.  In light of this litigation history, nothing in the record indicates that Plaintiff's changes in counsel caused delays.

Finally, Borrower asserts that it should not be penalized for COVID-19-related court closures.  Mizrahi Aff. ¶ 25.  Borrower, however, does not point to any specific COVID-19-related delays.  Moreover, under the COVID-19 Emergency Protect Our Small Business Act of 2021, even

if Borrower had made a declaration of COVID-19-Related hardship, it would still be required to pay mortgage fees, penalties, and interest. *See, e.g.*, N.Y. Laws of 2020, c. 381; Laws of 2021, c. 73.

Accordingly, this Court finds that there is no reason to reduce the interest owed by Borrower. It is therefore respectfully recommended that Plaintiff be awarded the total default interest accrued at the Default Rate through the date of entry of Judgment of Foreclosure, namely, $741,227.18.

### 4. Late Fees

Plaintiff next argues that it is entitled to a total of $109,595.84 in late fees per the terms of the Loan Agreement. Nunez Aff. ¶ 29; Nunez Aff., Ex. A, at 28. Although late fees accrued prior to August 6, 2016, Plaintiff only seeks late fees associated with late monthly payments for the period of August 6, 2016 through the acceleration of the Loan in April 2017 ($5,995.84), in addition to a late fee of five percent on the accelerated principal balance ($103,600.00). *Id.*; *see also* Nunez Aff., Ex. I. Borrower disputes the late fees by attempting to demonstrate that Plaintiff misapplied payments, causing the late payments. Mizrahi Aff. ¶¶ 11, 13–14, 17. The evidence submitted by Borrower, however, only disputes late fees applied in 2015. Mizrahi Aff., Exs. C, D, G.

Under New York Law, "[i]n the absence of a provision in the mortgage to the contrary, the collection of late fees after a mortgage note has been accelerated is impermissible." *4 B's Realty 1530 CR39, LLC v. Toscano*, 818 F. Supp. 2d 654, 662 (E.D.N.Y. 2011) (quoting *Carreras v. Weinreb*, 826 N.Y.S.2d 72, 74 (2d Dep't 2006)). The reason behind this presumption is that it is "inconsistent to allow a lending institution to accelerate a note, thereby denying the debtor the right under the mortgage note to make monthly installments and to continue to insist on its own

right under the note to impose monthly late charges." *Id.* (quoting *Green Point Sav. Bank v. Varana*, 653 N.Y.S.2d 656, 657 (2d Dep't 1997)); *In re Guarnieri*, 297 B.R. 635, 369 (Conn. 2003) (explaining how "[i]n the absence of an obligation to make monthly payments, payments cannot be 'late.'"). A loan agreement term does not run afoul of this general rule, however, when it imposes a late fee on a balloon payment. *See 1300 Ave. P Realty Corp. v. Stratigakis*, 720 N.Y.S.2d 725, 747–48 (2d Dep't 2000) (finding that the lender could collect a four percent late payment charge on both installment payments and the final balloon payment).

Here, the Loan Agreement states:

> If any principal, interest or any other sums due under the Loan Documents, including the payment of principal due on the Maturity Date, is not paid by Borrower on or prior to the date on which it is due, Borrower shall pay to Lender upon demand an amount equal to the lesser of (a) five percent (5%) of such unpaid sum, and (b) the Maximum Legal Rate[.]

Nunez Aff., Ex. A, at 28. "Maturity Date" is defined in the Loan Agreement as either November 6, 2019, or any other date when the final payment of the principal becomes due, such as by acceleration. *Id.*, at 13. In New York, the maximum legal rate is sixteen percent per annum. N.Y. Gen. Oblig. § 5-501; N.Y. Banking § 14-a(a). Accordingly, the five percent rate applies. Moreover, because the express terms of the Loan Agreement state that the late fee should be applied to the principal due as of the Maturity Date, as opposed to monthly late fees post-acceleration, the post-acceleration late fee is also applicable.

It is therefore respectfully recommended that Plaintiff should be awarded the total late fees it seeks: $109,595.84.

### 5.    Advances and Interest on Advances

Plaintiff next claims that it is entitled to reimbursements for advances made to protect the mortgage, with interest. Nunez Aff. ¶ 30. According to Plaintiff's paperwork, through July 2023,

the total amount owed by Plaintiff is $140,350.26.  Nunez Supp. Aff. ¶ 18.  These advances consist of real estate taxes, property insurance, appraisal expenses, and inspection fees.  Nunez Aff. ¶¶ 30-31; Nunez Aff., Ex. I; Nunez Supp. Aff., Ex. B.  Borrower argues that Plaintiff has not submitted proper documentation for these advances and is not entitled to interest.  Mizrahi Aff., ¶¶ 27, 32.

"Affidavits, declarations, and loan documents are sufficient to establish damages with respect to advances paid by a mortgagee on behalf of a mortgagor in a foreclosure action."  *Freedom Mortgage Corp. v. Ervin*, 18-CV-1082 (ENV) (SMG), 2019 WL 2436298, at *7 (E.D.N.Y. Feb. 12, 2019) (citations omitted), *report and recommendation adopted*, 2019 WL 2511873 (June 18, 2019).  Here, the Loan Agreement requires Borrower to reimburse Plaintiff upon demand for "interest payable on advances made by Servicer with respect to delinquent debt service payments (to the extent interest at the Default Rate actually paid by Borrower in respect of such payments are insufficient to pay the same) or expenses paid by Servicer or trustee in respect of the protection and preservation of the Property," such as taxes, insurance premiums, and other charges.  Nunez Aff., Ex. A, at 2, 79-80.

Plaintiff provides a detailed explanation of the the property taxes it was required to pay and the insurance plans it needed to purchase.  Nunez Aff. ¶ 30.  These numbers are also included in Plaintiff's corresponding exhibits, which itemize each advance made.  Nunez Aff., Ex. I; Nunez Supp. Aff., Ex. B.  This is sufficient to establish the tax and insurance advances owed.  *See OneWest Bank, N.A. v. Simon*, 14-CV-6622 (RJD) (VMS), 2022 WL 17820100, at *5 (May 13, 2022) (finding that the plaintiff's affidavit with itemized disbursements in addition to an exhibit listing the amounts established the tax and insurance advances), *report and recommendation adopted*, June 2, 2022 Order.

Plaintiff, however, fails to provide sufficient documentary support for its appraisal expenses, inspection fees, and other liabilities, such as the "Misc. Fee (bank fee)" and "Title Premium" identified in Plaintiff's calculations. Nunez Aff., Ex. I. Plaintiff simply lists these items, but there is no explanation or documentation that reflect how these costs were incurred. The Court therefore has no way of verifying the accuracy of Plaintiff's statements. *See, e.g.*, *Simon*, 2022 WL 17820100, at *5 (when the plaintiff's affidavit did not include an itemized list or attach documentation of the costs, the court refused to award advances for property inspections, preservation disbursements, and broker price opinions); *Nationstar Mortgage LLC v. Fernandez*, 17-CV-404 (DRH) (SIL), 2017 WL 6767239, at *5-6 (E.D.N.Y. Nov. 21, 2017) (although the plaintiff had the right to collect insurance costs, taxes, property preservation costs, and inspection costs under the mortgage, conclusory allegations that lacked sufficient documentation, such as invoices, receipts, or other documentary proof, were insufficient to substantiate the requests), *report and recommendation adopted*, 2018 WL 262837 (Jan. 2, 2018), *vacated in part on other grounds*, 2018 WL 3424452 (Mar. 20, 2018); *Ervin*, 2019 WL 2436298, at *7 (although plaintiff explained some advances sufficiently, it failed to corroborate others or to explain how they related to the loan).

As for interest on the advances, the Court has reviewed the Loan Agreement and the various documentation provided by Plaintiff. Although the Loan Agreement refers to interest payable on the advances, it nowhere states the percent of interest. Further, interest on the advances is applicable "to the extent interest at the Default Rate actually paid by Borrower in respect of such payments are insufficient to pay the same." Nunez Aff., Ex. A, at 79-80. In its memorandum in support and affidavit, Plaintiff says that as of March 6, 2023, it is owed $84,667.49 in interest on advances. Dkt. No. 87-2 ("Pl. Mem.") at 12-14; Nunez Aff. ¶ 31. But Plaintiff does not provide

any calculation as to how this number was reached, nor is it incorporated into the other interest calculations.  Again, without an explanation, the Court cannot verify this calculation or even know what interest rate is being applied to the advances.  Moreover, the Court is awarding default interest.

Accordingly, this Court respectfully recommends that Plaintiff be awarded $117,756.86 for real estate tax and insurance advances, but not for advances in connection to appraisal expenses, inspection fees, and other miscellaneous items.  This amount consists of: (1) the $93,174.12 in real estate taxes advanced by Plaintiff through March 2023 (Nunez Aff. ¶ 30; Nunez Aff., Ex. I); (2) the $5,117.04 in insurance premiums advanced by Plaintiff through March 2023 (Nunez Aff. ¶ 30; Nunez Aff., Ex. I); (3) the $13,846.66 in real estate taxes advanced by Plaintiff in April 2023 through July 2023 (Nunez Supp. Aff. ¶ 19; Nunez Supp. Aff., Ex. B); and (4) the $5,619.54 in insurance premiums advanced by Plaintiff in May 2023 through July 2023 (Nunez Supp. Aff. ¶ 20; Nunez Supp. Aff., Ex. B).  This Court further exercises its powers in equity not to award interest on the advances.  *See United States v. Arena*, No. 02-CV-5216 (JS) (WDW), 2007 WL 2907480, at *3 (E.D.N.Y. Jan. 29, 2007) (exercising powers in equity and declining to award interest), *modified by*, 2007 WL 2907492 (E.D.N.Y. Aug. 24, 2007), *report and recommendation adopted*, 2007 WL 2907430 (E.D.N.Y. Sept. 30, 2007).

### 6.    Financial Statement Fees

Plaintiff seeks $35,000.00 in fees due to Borrower's failure to adhere to financial reporting requirements.  Nunez Aff. ¶ 32.  Section 5.1.11 of the Loan Agreement requires Borrower to provide various records to Plaintiff at certain times and inclusive of specific information.  Nunez Aff., Ex. A, at 48-51.  If Borrower fails to furnish this information, Plaintiff has the option to demand $5,000.00 for each required record.  *Id.*  Accordingly, in 2016, Plaintiff made demands

for records and for the corresponding $5,000.00 penalty.  Nunez Aff., Ex. G.  Plaintiff provides various emails documenting its notifications to Borrower regarding the breach of this term.  *Id.* Borrower claims that Plaintiff has not established its entitlement to such fees or Borrower's non-compliance.  Mizrahi Aff. ¶ 28.  This Court finds Borrower's argument unavailing.  The Loan Agreement obligates Borrower to provide such documents to Plaintiff, and Plaintiff submitted proof of its demand for such documents.  *See* Nunez Aff., Ex. A, at 48-51; Nunez Aff., Ex. G, at 3.  Borrower does not submit any rebuttal evidence, such as proof that it complied with the financial reporting requirements.

Therefore, the Court respectfully recommends that Plaintiff be awarded $35,000.00 in fees relating to the missing financial statements.

### 7.    Servicer and Liquidation Fees

Plaintiff asserts that it is entitled to a special servicing fee ($33,852.76) and liquidation fee ($29,853.39).  Nunez Aff. ¶¶ 33-34.  Under New York law, if provided for in the loan documents, special servicing fees are permissible, but the party seeking those fees must prove the amount.  *See In re South Side House, LLC*, 451 B.R. 248, 273 (E.D.N.Y. 2011) (citing *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 899 N.Y.S.2d 15 (1st Dep't 2010)).  Here, the Loan Agreement states that if default should occur and Plaintiff should make a demand for it, Borrower is responsible for servicer fees, including liquidation and special servicing fees.  Nunez Aff., Ex. A, at 79.

While this Court is inclined to follow the terms of the agreement, Plaintiff does not provide any documentation as to how it calculated the numbers for both fees.  Without more documentation, this Court respectfully recommends that Borrower's request for special servicing and liquidation fees be denied.  *See U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of*

*Wachovia Bank Com. Mortg. Tr. Com. Mortg. Pass-Through Certificates, Series 2007-ESH v. Lightstone Holdings LLC*, 66 Misc. 3d 1232(A), at *8-*9 (Sup. Ct., N.Y. Cnty. 2020) (holding that plaintiff was not entitled to the total liquidation fees it requested because it did not establish such fees with competent evidence).

### 8.    Attorneys' Fees and Costs

Plaintiff seeks an award of attorneys' fees and costs.[9]  Pl. Mem., at 15; Nunez Aff. ¶ 35. "In the Second Circuit, a party seeking an award for attorney's fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done."  *Ent. by J&J, Inc. v. Friends II, Inc*., No. 02-CIV-585 (JES) (RLE), 2003 WL 1990414, at *5 (S.D.N.Y. Apr. 25, 2003) (quoting *New York State Association for Ret. Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir.1983)). "A plaintiff in a foreclosure action may recover attorneys' fees and costs against a mortgagor if the note or mortgage allows for such an award." *Ervin*, 2019 WL 2436298, at *8.   The party seeking attorneys' fees bears the burden of demonstrating the hours worked through contemporaneous record-keeping and the reasonableness of the rates charged.  *Kahlon v. Yitzhak*, 270 F. Supp. 3d 583, 591 (E.D.N.Y. 2017); *see also Ferrara v. Reliable Indus. II, Inc*., No. 11-CV-434 (ENV) (MDG), 2012 WL 6851088, at *4 (Sept. 27, 2012) (noting that "[a] party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records" (citation omitted)), *report and recommendation adopted*, 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013).

---

[9] Plaintiff correctly indicates that New York law governs the availability and calculation of attorneys' fees. *See* Pl. Mem., at 15; *see also CIT Bank N.A. v. Gordon*, No. 17-CV-3972 (ADS) (SIL), 2020 WL 4587446, at *2 (E.D.N.Y. May 10, 2020) (applying New York law to motion for attorneys' fees filed in foreclosure action), *report and recommendation adopted*, 2020 WL 2711420 (E.D.N.Y. May 26, 2020); *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) (noting that "state law creates the substantive right to attorney's fees") (quotation marks, citation, and alteration omitted).

As a preliminary matter, the Loan Agreement and the Mortgage provide Plaintiff with the right to seek an award of attorneys' fees and costs.  Nunez Aff., Ex. A, at 52, Ex. C, at 6-7, 15.  Plaintiff's Proposed Order sets forth a procedure for awarding attorneys' fees and costs, which requires Plaintiff to file and serve upon Borrowers a fee application setting forth attorneys' fees and costs within fourteen days of the entry of this Order.  Proposed Order.  At this stage, however, Plaintiff does nothing more than request the fees, expenses, and court costs.  Pl. Mem., at 15; Nunez Aff. ¶ 35.  Plaintiff does not attach any timesheets or invoices to support its request.  "'In general, courts in this Circuit will not award attorney's fees assessed at a flat-rate unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'"  *United States v. Basile*, No. 19-7022 (JS) (ARL), 2023 WL 5152519, at *4 (E.D.N.Y. June 27, 2023), *report and recommendation adopted*, 2023 WL 5525096 (E.D.N.Y. Aug. 28, 2023) (citations omitted).  Indeed, "[t]he absence of contemporaneous records precludes any fee award in all but the most extraordinary of circumstances."  *Id.* (citation omitted).

Accordingly, this Court cannot assess the reasonableness of the fees because it does not know how many attorneys worked on the action or how many hours were worked and at what hourly rate.  Therefore, this Court respectfully recommends denying Plaintiff's requests for attorneys' fees and costs, without prejudice and pending further documentation.

### 9.    Credits

Finally, Borrower seeks credits for alleged misapplied payments and improperly charged lockbox fees.  Mizrahi Aff. ¶¶ 13, 14, 16.  Specifically, these include: (1) misapplied payments from February 2015 ($13,584.73); (2) late fees from June 2015 ($715.45); and (3) improper lockbox charges ($2,500.00).  *Id.*

19

First, the misapplied payments from February 2015 were applied in March 2015. Nunez Aff., Ex. H. Borrower is therefore not entitled to a credit for such payments. Second, Plaintiff has waived all late fees prior to default in August 2016, so the late fee charged in June 2015 is irrelevant to the Court's analysis. *See* Section III(B)(4) *supra*; Pl. Reply, at 9. Finally, regarding the lockbox, Borrower claims it is entitled to a credit because it was charged for the lockbox during the period of time in which the Borrower suspended the lockbox arrangement. Mizrahi Aff. ¶ 16. But as explained above, this contention is disputed by Plaintiff, who claims that it stopped charging Borrower for the lockbox in September 2015, when the lockbox was suspended, until March 2016, when a new lockbox was opened. *See* Section III(B)(3) *supra*. Still, Plaintiff agreed to credit Borrower $715.45 for the purposes of this motion to resolve this issue. Pl. Reply, at 10. Accordingly, this Court respectfully recommends that Borrower receive a credit in the amount of $715.45.

## IV.    <u>Conclusion</u>

For the reasons set forth above, this Court respectfully recommends that Plaintiff be awarded $3,603,179.68 plus interest accruing at a daily rate of $622.58 from July 31, 2023 through the entry of Judgment of Foreclosure. The computation is set forth below:

| | |
|---|---|
| Principal | $2,071,999.91 |
| Contract Interest | $528,315.34 |
| Default Interest | $741,227.18 |
| Late Fees | $109,595.84 |
| Advances | $117,756.86 |
| Interest on Advances | $0.00 |
| Financial Statement Fees | $35,000.00 |
| Liquidation Fees | $0.00 |
| Servicer Fee | $0.00 |
| Credit | -$715.45 |
| | $3,603,179.68 |

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiff's counsel is hereby directed to serve copies of this Report and Recommendation upon Defendants by regular and certified mail and to file proof of service with the Clerk of the Court by January 16, 2024.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). See also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Matsumoto.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:        Brooklyn, New York
              January 15, 2024

                                     */s/ Joseph A. Marutollo*
                                    JOSEPH A. MARUTOLLO
                                    United States Magistrate Judge

21