UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
WELLS FARGO BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR THE HOLDERS OF COMM 2014-
UBS6 MORTGAGE TRUST COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES, BY                    **MEMORANDUM &**
AND THROUGH ITS SPECIAL SERVICER, LNR                     **ORDER**
PARTNERS LLC,

                        Plaintiff,                    17-CV-3570
                                          (Matsumoto, J.)
           v.                    (Marutollo, M.J.)

366 REALTY LLC; JOSHUA MIZRAHI; CRIMINAL
COURT OF THE CITY OF NEW YORK; NYC
ENVIRONMENTAL CONTROL BOARD; NEW
YORK CITY DEPARTMENT OF FINANCE; and
KASSIN SABBAGH REALTY LLC,

                        Defendants.
-------------------------------------------------------------------X

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

       Plaintiff Wells Fargo Bank National Association, as Trustee for the Holders of COMM

2014-UBS6 Mortgage Trust Commercial Pass-Through Certificates, by and through its special

servicer, LNR Partners LLC ("Plaintiff") brings this foreclosure action against Defendants 366

Realty LLC ("366 Realty"); Joshua Mizrahi; Criminal Court of the City of New York (the

"Criminal Court"); NYC Environmental Control Board ("ECB"); New York City Department of

Finance ("DOF"); Kassin Sabbagh Realty LLC ("Kassin"); as well as several other defendants

who were thought to possess or claim an interest in or lien upon the real property located at 366

Knickerbocker Avenue, Brooklyn, New York 11237 (the "Property").  *See* Dkt. No. 1.

       On March 16, 2021, the Court granted Plaintiff's motion for summary judgment against

366 Realty.  *See* Dkt. No. 58; *see also Wells Fargo Bank Ass'n v. 366 Realty LLC*, 2021 WL

9494173 (E.D.N.Y. Mar. 16, 2021) (Johnson, J.).  On September 27, 2025, the undersigned issued

a Report and Recommendation, recommending that default judgment be granted as to the Criminal

Court and the ECB, but denied as to the DOF and Kassin.[1]  *See* Dkt. No. 159.

Currently pending before this Court are Mizrahi's motion for summary judgment on the

issue of his guarantor liability, *see* Dkt. No. 141 ("Mizrahi's Motion"), and Plaintiff's motion for

summary judgment as to Mizrahi's interest in the Property and his guarantor liability, as well as

for appointment of a receiver, *see* Dkt. No. 142 ("Plaintiff's Motion").  Plaintiff, Mizrahi, and 366

Realty have consented to the undersigned's adjudication of Mizrahi's Motion and Plaintiff's

Motion.  *See* Dkt. No. 147.[2]

For the reasons set forth below, Mizrahi's Motion is DENIED, and Plaintiff's Motion is

GRANTED in part and DENIED in part.

## I.    <u>Background</u>

### A.    **Factual Allegations**

The following facts, taken from the parties' Local Civil Rule 56.1 ("Rule 56.1") statements,

the materials submitted in connection with Mizrahi's Motion (Dkt. Nos. 141, 150) and Plaintiff's

Motion (Dkt. Nos. 142, 143, 149, 151) and the Second Amended Complaint (Dkt. No. 121)

("SAC"), are undisputed unless otherwise noted.[3]

---

[1] Plaintiff's motion for default judgment, Dkt. No. 148, was denied as moot as to Kassin because judgment had already been entered as to it.  *See* Dkt. No. 159 at 2 n.3; *see also* September 19, 2025 Order.

[2] Plaintiff's Motion, as it pertains to appointment of a receiver for the Property, is not dispositive.  *See Fed. Nat'l Mortg. Ass'n v. 1488 Bushwick, LLC*, No. 23-CV-4030 (RPK) (TAM), 2024 WL 4728666, at *1 n.2 (E.D.N.Y. Nov. 8, 2024). (collecting cases).  Accordingly, the parties need not have consented to the undersigned's adjudication of the same.  Further, the consent of the Criminal Court, the ECB, the DOF, and Kassin to magistrate judge jurisdiction here is unnecessary, given that Mizrahi's Motion and Plaintiff's Motion relate only to the interests of the appearing parties—Plaintiff, Mizrahi, and 366 Realty.

[3] As noted in *Su v. Top Notch Home Designs Corp.*,

> Under Local Rule 56.1, a party moving for summary judgment must submit a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the

On November 6, 2014, 366 Realty executed a loan agreement (the "Loan Agreement") obtaining a loan (the "Loan") for $2,200,000 from Cantor Commercial Real Estate Lending, L.P. (the "Original Lender"). Dkt. Nos. 38 ¶ 6; 121 ¶¶ 13-14; 121-3. Defendant 366 Realty signed and delivered an Amended, Restated, and Consolidated Promissory Note (the "Note"). Dkt. Nos. 38 ¶ 7; 121 ¶ 15; 121-4. The indebtedness owed under the Note is secured by the Property, as outlined in the Mortgage Security Agreement and Assignment of Leases and Rents ("Original Mortgage"). Dkt. Nos. 38 ¶ 9; 121 ¶ 16; Dkt. No. 121-5.

After numerous assignments, the indebtedness owed under the Note was further secured by the Property, as evidenced by the Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated November 6, 2014 (the "Amended Mortgage"). Dkt. Nos. 38 ¶ 12; 121 ¶¶ 17-22. The Amended Mortgage, which restated,

---

moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The opposing party must submit a statement responding to each numbered paragraph, and can include additional paragraphs "to which it is contended that there exists a genuine issue to be tried." Local Rule 56.1(b). Statements by each party "must be followed by citation to evidence which would be admissible" under Fed. R. Civ. P. 56(c). Local Rules 56.1(d). "Where . . . the record does not support the assertions in a 56.1 statement, those assertions should be disregarded, and the record viewed independently" because "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001).

No. 20-CV-5087 (GRB) (JMW), 2023 WL 8878553, at *3 (E.D.N.Y. Dec. 22, 2023). "A party may not rest on a mere denial without citing supporting admissible evidence." *Ward v. Nassau Cnty.*, No. 15-CV-4309 (GRB) (LGD), 2023 WL 5417329, at *1 (E.D.N.Y. Aug. 22, 2023) ("Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts.") (citing *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-CV-0500, 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001), *aff'd*, 49 F. App'x 356 (2d Cir. 2002). "Where [] a party opposing summary judgment fails to properly controvert a movant's statement of material fact, such statement will be deemed admitted for the purposes of the motion." *Cemetery Workers Supplemental Pension Fund by Alladeen v. Lutheran All Faiths Cemetery*, No. 19-CV-6897 (RPK) (RML), 2021 WL 7908022, at *1 n.1 (E.D.N.Y. Sept. 9, 2021) (citation and quotation marks omitted).

amended, and consolidated the Original Mortgage, granted the Original Lender a first-priority lien on the Property.  Dkt. Nos. 38 ¶¶ 13-14; 121 ¶¶ 23-25; 121-8.

As a further source of repayment for the obligations owed by 366 Realty, including its obligations under the Note, 366 Realty executed an Assignment of Leases and Rents (the "ALR").  Dkt. Nos. 38 ¶ 15; 121 ¶ 27; Dkt. No. 121-9.  Mizrahi also allegedly guaranteed repayment of the Loan pursuant to a Guaranty of Recourse Obligations, dated November 6, 2014 (the "Guaranty").  Dkt. Nos. 38 ¶ 16; 121 ¶ 29; Dkt. No. 121-10.

In December 2014, the Original Lender assigned and transferred all rights, title, and interest in the Loan Agreement, Note, ALR, Guaranty, and Amended Mortgage (collectively, the "Loan Documents") to Plaintiff.  Dkt. Nos. 38 ¶¶ 17-18; 121 ¶ 30; Dkt. No. 121-11.

The Amended Mortgage provides for appointment of a receiver.  *See* Dkt. No. 142-15 § 7.1(g) (Upon 366 Realty's default, Plaintiff may "apply for the appointment of a receiver . . . of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of [366 Realty], any guarantor or indemnitor with respect to the Loan . . . .").

There is no dispute between the parties that 366 Realty has been in default under the Loan Documents since 2017.  *See* Dkt. No. 38 ¶ 31.  Indeed, Plaintiff notified 366 Realty numerous times that it was in default under the terms of the Loan Documents.  *See* Dkt. Nos. 58 at 7;[4] 121 ¶¶ 37-41; 121-13 – 121-17.  Plaintiff thereafter accelerated the Note on April 3, 2017.  *See* Dkt. Nos. 58 at 7; 121 ¶¶ 42-43; 121-18; 150 at 5.  Defendant 366 Realty admits that it has not cured the defaults and remains in default under the Loan Documents.  *See* Dkt. No. 38 ¶ 31 ("31.

---

[4] Citations are to ECF file-stamped pages unless otherwise noted.

Borrower has failed to cure the defaults and remains in default under the Loan Documents.[] Response: Not disputed with clarification of defense as to amounts and notice[.]").

B.    **Relevant Procedural History**

In light of the lengthy litigation history here, the Court presumes familiarity with the bulk of the procedural history of this case. *See, e.g.,* Dkt. Nos. 118 at 8-9, 110 at 4-6, 101 at 5, 95 at 3-4, 58 at 2-4.

As noted above, on March 16, 2021, the Court granted Plaintiff's motion for summary judgment against 366 Realty. *See* Dkt. No. 58; *see also Wells Fargo Bank Ass'n v. 366 Realty LLC*, 2021 WL 9494173 (E.D.N.Y. Mar. 16, 2021) (Johnson, J.). In doing so, the Court held that Plaintiff had standing to proceed in this action as the holder and assignee of the Note. *See* Dkt. No. 58 at 5. In the same motion, Judge Johnson denied Plaintiff's motion to appoint a receiver, stating that "this Court is not going to appoint a receiver without more information." *Id.* at 11.

Litigation then continued, which included Plaintiff's filing of its First Amended Complaint on April 19, 2023. *See* Dkt. No. 70.

On March 26, 2024, Judge Matsumoto adopted in full the undersigned's report and recommendation, *see* Dkt. No. 95, granting in part and denying in part Plaintiff's motion to fix indebtedness. *See* Dkt. Nos. 87, 101. In total, the Court awarded to Plaintiff $3,603,179.68 plus interest accruing at a daily rate of $622.58 from July 31, 2023 through the entry of Judgement of Foreclosure. Dkt. Nos. 95 at 20; 101 at 4.

On February 3, 2025, Plaintiff filed a letter-motion seeking leave to move for appointment of a rent receiver for the Property. Dkt. No. 116. Defendant 366 Realty filed a letter in opposition on February 10, 2025. Dkt. No. 117.

On February 28, 2025, Plaintiff filed a Second Amended Complaint. Dkt. No. 121. 366 Realty and Mizrahi answered the Second Amended Complaint on March 10, 2025. Dkt. No. 128.

On March 18, 2025, the undersigned held a status conference after which the parties were granted leave to file respective motions for summary judgment, and Plaintiff was granted leave to file a motion to appoint a receiver. *See* March 18, 2025 Minute Entry; March 22, 2025 Scheduling Order. The parties also consented to the jurisdiction of the undersigned to adjudicate these motions. Dkt. No. 147; *supra* note 2.

Mizrahi's Motion for summary judgment on the issue of his potential liability under the Guaranty was filed on April 28, 2025. Dkt. No. 141. Plaintiff's Motion for summary judgment on the issues of Mizrahi's potential liability under the Guaranty, and for appointment of a rent receiver for the Property was filed the same day. Dkt. No. 142. Mizrahi filed his opposition to Plaintiff's Motion on May 15, 2025. Dkt. No. 149. On May 15, 2025, Plaintiff filed its opposition to Mizrahi's Motion. Dkt. No. 150. Also on May 15, 2025, Plaintiff filed a motion for default judgment against the Criminal Court, the ECB, and the DOF. Dkt. No. 148. On May 21, 2025, Plaintiff filed a reply in further support of its Motion. Dkt. No. 151.

On September 19, 2025, with regard to Mizrahi's Motion, the Court directed the parties to file supplemental letter-briefs by September 26, 2025 addressing the issue of "whether the claims asserted in [] the First Amended Complaint against Defendant Mizrahi for a deficiency liability as a guarantor 'relate back' to the conduct set forth in [] the [original] complaint. *See* Fed R. Civ. P. 15(c)(1)." September 19, 2025 Text Order (italics added). Plaintiff filed its letter-brief on September 25, 2025. Dkt. No. 156.

Mizrahi did not file his letter-brief by the Court-ordered deadline. On September 27, 2025, the Court directed Mizrahi to file his letter-brief by 5 p.m. on September 29, 2025 "in accordance

with the Court's September 19, 2025 Order, or the same will be deemed waived."  September 27, 2025 Text Order.

Also on September 27, 2025, the undersigned issued a Report and Recommendation, recommending that Plaintiff's motion for default judgment be granted as to the Criminal Court and the ECB but denied as to the DOF and to Kassin.  Dkt. No. 159.

On October 3, 2025, Mizrahi filed its letter-brief, without explanation as to its tardiness or addressing the Court's statement regarding waiver.  Dkt. No. 161.

## II.  Discussion

### A.    Mizrahi's Guaranty

#### i.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted).  "There is 'no genuine dispute as to any material fact' where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material)."  *Lange v. Dep't of Educ. of City of New York*, No. 17-CV-3443 (SLT), 2018 WL 4636986, at *2 (S.D.N.Y. Sept. 26, 2018) (Sullivan, J.) (citations omitted).  The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact."  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *Sutera v. Schering Corp.*, 73 F.3d 13, 15-16 (2d Cir. 1995) (explaining that a court's responsibility in assessing the merits of a summary judgment motion is not to try issues of fact, but merely to "determine whether there *are* issues of fact to be tried." (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984)).

Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), or the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), are insufficient to create a genuinely disputed fact.

"A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Liberty Lobby, Inc.*, 477 U.S. at 251. "In other words, '[t]he litigant opposing summary judgment . . . may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial.'" *Jimenez v. City of New York*, No. 21-CV-6133 (RPK) (JRC), 2024 WL 198319, at *4 (E.D.N.Y. Jan. 18, 2024) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)).

8

ii.    **The Parties' Positions**

Defendant Mizrahi seeks summary judgment dismissing any claim asserted against him regarding the Guaranty "on the ground that Plaintiff failed to timely assert such claim and is now time-barred under New York Law from doing so." Dkt. No. 141-1 ¶ 2. Specifically, Mizrahi argues that, because the Note was due and payable when accelerated on April 3, 2017, *see id.* ¶¶ 7, 9, 17, and because Plaintiff only added specific language indicating a desire to seek a deficiency judgment against Mizrahi (and not only 366 Realty) under the Guaranty in its First Amended Complaint, filed April 19, 2023, *see* Dkt. Nos. 141-2 at 11; 70 at 12, such claim is time-barred under New York law as not having been asserted within six years of acceleration. *See* Dkt. No. 141-2 at 12. Because the statute of limitations ran on April 2, 2023, Mizrahi contends he is not liable under the Guaranty, including for a deficiency judgment. *See* Dkt. No. 141-1 ¶ 18.

Mizrahi admits that he executed the Guaranty on November 6, 2014 and raises no other defense to its enforcement. Dkt. Nos. 38 ¶ 16; 141-1 ¶ 5.

Mizrahi argues that "[t]he statute of limitations for the contract herein, the Guaranty, began to run on April 3, 2017, the date on which the debt was accelerated, creating a Guarantor obligation for the entire debt." Dkt. No. 141-2 at 6, 10-11. Mizrahi alleges that the "unconditional" nature of the Guaranty compels the conclusion that Plaintiff had six years to reserve the right to a deficiency judgment against Mizrahi, which Plaintiff failed to do. *Id.* at 12-13. Mizrahi also contends that the statute authorizing enforcement of deficiency judgments, R.P.A.P.L. § 1371 is in derogation of New York common law and must be strictly construed. *Id.* at 7.

In his supplemental letter-brief,[5] Mizrahi contends that the claims asserted in the First Amended Complaint against Mizrahi for deficiency liability as a guarantor do not "relate back" to the conduct outlined in the Complaint, as set forth in Fed R. Civ. P. 15(c)(1). Dkt. No. 161. Mizrahi admits that he was named in the Complaint as a "a party defendant [] based upon his status as guarantor of the loan having or claiming an interest in or lien upon the premises described in the Complaint[.]" *Id.* at 1 (citing Dkt. No. 1 ¶ 3). Mizrahi, however, alleges that these allegations were only sufficient to put Mizrahi on notice to assert, "whatever interest [he has] or may claim to have in the Property[,] and not of any potential personal liability regarding the debt. *Id.* at 2.

Mizrahi does not dispute that the "relation back" doctrine of Fed. R. Civ. P. 15(c)(1) is to be "liberally construed as to transactions alleged in the initial pleading." *Id.* 3. Mizrahi contends that, though he was named in the Complaint, specifically in the context of the Guaranty, the fact that he was absent from the Complaint's language regarding a deficiency judgment (which mentioned only 366 Realty), *see* Dkt. No. 1 at 16, it was "wholly rational" for him to believe that Plaintiff would not seek to enforce the Guaranty against him for a deficiency judgment. Dkt. No. 161 at 2. Mizrahi adds that this presumption was bolstered by his belief that, at the time of initiation of this action, Plaintiff likely "anticipated that the assets of [366 Realty] would suffice to cure the default upon foreclosure." *Id.*

Plaintiff contends, alternatively, that the Guaranty is not time-barred because of the forward-looking nature of its terms, and that the statute of limitation runs from each new breach of the Guaranty by Mizrahi. *See* Dkt. No. 150. Plaintiff states that the Guaranty is not a "simple

---

[5] As noted above, Mizrahi filed his supplemental letter brief one week after the Court's initial deadline, and four days after the Court's *sua sponte* extension of this deadline, despite admonitions that failure to timely file his letter would result in Mizrahi's waiver of any arguments therein. *See* September 19, 2025 Text Order; September 27, 2025 Text Order; Dkt. No. 161. Nevertheless, the Court considers Mizrahi's arguments.

unconditional payment guaranty" whereby acceleration of the loan would render the unpaid amounts immediately due, but instead that Mizrahi's obligations under the Guaranty were triggered by Mizrahi's "bad acts," and Plaintiff's demand of payment. *Id.* at 11. Moreover, Plaintiff contends that the Guaranty's language, which describes itself as "an irrevocable, absolute, and continuing guaranty of payment and performance and not a guaranty of collection[,]" Dkt. No. 121-10 § 1.3, as well as the Guaranty's reference to future obligations, such as liability for failure to pay taxes, maintain insurance policies, or misappropriating rent from the Property, reinforces the continuing nature of the obligations. *See* Dkt. No. 150 at 11-12; *see also* Dkt. No. 121-10 § 1.2(a). Accordingly, Plaintiff asserts that every time 366 Realty fails to pay insurance costs, taxes, water and sewer costs or other charges in violation of the Loan Documents, new liability is triggered, and a new cause of action accrues under the "continuing wrong doctrine." *See* Dkt. No. 150 at 12-13.

Plaintiff asserts that the cases cited by Mizrahi are inapposite and do not address the issue of the continuing nature of the Guaranty and alleged continuing wrongful acts committed by 366 Realty, such that Plaintiff can proceed against Mizrahi under the Guaranty for any deficiency accruing as far back as April 19, 2017. *See id.* at 15. Plaintiff also acknowledges that it proceeded in equity by foreclosing on the Property and not suing on the Note and Guaranty, but disputes that this has rendered untimely Plaintiff's deficiency claim against Mizrahi. *Id.* at 14.

In its supplemental letter-brief, Plaintiff states that notes that the Complaint contained "explicit references to [] Mizrahi in his position as a 'guarantor' of the defaulted loan and included a copy of the Guaranty itself, setting forth all of the terms of his liability." Dkt. No. 158 at 1; *see also* Dkt. No. 1 ¶¶ 2-3, 37, 60. Plaintiff states that, while the First Amended Complaint "was revised for several reasons unrelated to the Guarantor," it added allegations regarding Mizrahi's

liability under the Guaranty. Dkt. No. 158 at 1; *see also* Dkt. No. 70 ¶¶ 53, 55, and "Wherefore" clause. Plaintiff contends that the claims in the First Amended Complaint "relate back" to the claims in the Complaint under Fed. R. Civ. P. 15(c)(1)(A) because C.P.L.R. § 203(f) allows for it, so long as the original pleading gave "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading[,]" which Plaintiff asserts it did. *See* Dkt. No. 158 at 3 (quoting C.P.L.R. § 203(f)). Plaintiff also alleges that "relation back" is also merited under Fed. R. Civ. P. 15(c)(1)(B) because the claims in the First Amended Complaint "arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Id*. at 4 (quoting Fed. R. Civ. P. 15(c)(1)(B)).

At bottom, Plaintiff states that the Complaint put Mizrahi on notice from the beginning of the possibility of personal liability under the Guaranty, otherwise, "[t]here was no reason to attach the Guaranty to the original Complaint" and that Mizrahi "can claim neither prejudice nor surprise[.]" *Id.*

### iii.    Denial of Mizrahi's Motion is Warranted

Because Plaintiff's claims against Mizrahi under the Guaranty in the First Amended Complaint "relate back" to the claims in the Complaint under Fed. R. Civ. P. 15(c)(1)(A), Mizrahi's Motion is denied. Additionally, because Mizrahi admits to having executed the Guaranty, Dkt. Nos. 38 ¶ 16; 141-1 ¶ 5, and raises no other defense besides timeliness, the Court grants Plaintiff's Motion as to the validity of the Guaranty, including Plaintiff's right to seek a post-foreclosure sale deficiency judgment against Mizrahi, and as to extinguish Mizrahi's interest in the Property.[6]

---

[6] The Court also grants Plaintiff's Motion seeking summary judgment as to Mizrahi's interest in the Property, which Mizrahi did not oppose, besides raising the timeliness issue of the Guaranty. *See* Dkt. Nos. 149-1; 151 at 6 n.3 ("[Mizrahi] has not opposed the portion of [Plaintiff's] Motion that seeks to extinguish

Neither Plaintiff nor Mizrahi disputes that Fed. R. Civ. P. 15(c) is to be interpreted broadly, and with the purpose of providing "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." *Slayton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006)); *see also* Dkt. Nos. 158 at 3; 161 at 3. Nor do they dispute that the six-year statute of limitations enumerated in N.Y. C.P.L.R. 213 applies to this foreclosure action. *See* Dkt. Nos. 141-2 at 6-7; Dkt. 158 at 3 n.2; *See 53rd St., LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) ("an action to foreclose on a mortgage is subject to a six-year statute of limitations.") (citing C.P.L.R. § 213(4)).

Under Fed. R. Civ. P. 15(c)(1)(A), "'if the applicable statute of limitations is determined by state law . . . courts should assess both the state and federal relation back doctrines and apply whichever law is more generous.'" *Vuksanovich v. Airbus Americas, Inc.*, 608 F. Supp. 3d 92, 110 (S.D.N.Y. 2022) (quoting *Liverpool v. Davis*, 442 F. Supp. 3d 714, 725 (S.D.N.Y. 2020)); *see also Anderson v. City of Mount Vernon*, No. 09-CV-7082 (ER) (PED), 2014 WL 1877092, at *2 (S.D.N.Y. Mar. 28, 2014). Put differently, "[u]nder federal law, if a claim 'arises under state law, . . . relation back is to be determined by whichever procedural rule gives the most favorable result to the plaintiff.'" *EverHome Mortg. Co. v. Charter Oak Fire Ins. Co.*, 07-CV-98 (RRM) (RML), 2012 WL 868961, at *9 (E.D.N.Y. Mar. 14, 2012) (quoting *Smith v. Rochester Tel. Bus. Mktg. Corp.*, 786 F. Supp. 293, 309 (W.D.N.Y. 1992), *aff'd*, 40 F.3d 1236 (2d Cir. 1994)).

---

[Mizrahi's] interests in the Mortgaged Property."). "[W]here a party refers to an issue in only a perfunctory manner, unaccompanied by any effort at developed argumentation, it must be deemed waived—or, more precisely, forfeited." *O'Sullivan v. PHH Mortg. Corp.*, No. 22-CV-4420 (NJC) (ARL), 2025 WL 1835926, at *16 (E.D.N.Y. July 3, 2025) (citing *In re Demetriades*, 58 F.4th 37, 54 (2d Cir. 2023)); *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed [waived or forfeited].") (internal quotation marks omitted); *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (considering an argument "waived" because the plaintiff failed to "raise this argument in his opposition to summary judgement").

"[C]ourts in this District consistently find the New York State relation back rule more generous than the federal provision." *Jiminez* v. *Hartford*, No. 21-CV-1039 (NSR), 2022 WL 1567701, at *4 (S.D.N.Y. May 17, 2022) (collecting cases).

Here, N.Y. C.P.L.R. 203(f) provides for relation back, "unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading." C.P.L.R. 203(f). However, "[a] court should not relate-back a claim under N.Y. C.P.L.R. 203(f) 'where to do so would increase the measure of liability to which the defendants are exposed.'" *Jiminez*, 2022 WL 1567701, at *11 (quoting *Fazio Masonry, Inc. v. Barry, Bette & Led Duke, Inc.*, 23 A.D.3d 748, 749 (3d Dep't 2005)).

Here, the Complaint provided ample notice to Mizrahi of the "transactions, occurrences, or series of transactions or occurrences" concerning Plaintiff's foreclosure upon the Property, including Mizrahi's potential liability under the Guaranty, which was attached to the Complaint. *See* Dkt. Nos. 1; 1-10; C.P.L.R. 203(f). Mizrahi was also explicitly named in the Complaint as a guarantor for liability under the Loan Documents. *See* Dkt. No 1 ¶¶ 2-3, 37, 60. The Court rejects Mizrahi's baseless contention that it was "wholly rational" for him to believe that Plaintiff would not seek to enforce the Guaranty against him. Dkt. No. 161 at 2. Indeed, the addition of explicit language regarding Plaintiff's right to seek a deficiency judgment against Mizrahi "does not allege a new claim but [instead] renders prior allegations more definite and precise." *Slayton*, 460 F.3d at 228 (citing *Stevelman v. Alias Research Inc*., 174 F.3d 79, 87 (2d Cir.1999)). Mizrahi cites *In re Enron Creditors Recovery Corp*., 370 B.R. 90 (S.D.N.Y. 2007), for the proposition that attachment of a guarantee to a bankruptcy proof of claim without seeking relief under it was insufficient to allow relation back under Fed. R. Civ. P. 15 (c). But in *Enron*, that Bankruptcy Court applied Fed. R. Civ. P. 15 (c) "by analogy" to a creditor's amendment request, pursuant to

14

the court's discretion under Bankruptcy Rule 9014(c). *See id.* at 95. *Enron* is further distinguishable as it involves adding to the dispute not only a claim under a guarantee, but also the party that executed the guarantee that was not named in the proof of claim before the limitations period expired, as contemplated by Fed. R. Civ. P. 15 (c)(1)(C), and not (c)(1)(A) or (c)(1)(B), which are at issue here. *See id*. at 95-96. Here, Mizrahi was a party to this action from its inception and had full notice of the potential claim against him under the Guaranty.

Indeed, Plaintiff's additional assertions in the First Amended Complaint expressly seeking relief under the Guaranty as to Mizrahi, including a possible deficiency judgment, "merely add[]" to claims "arising out of a transaction or occurrence already in litigation" and do not conflict with the purposes of statutes of limitations, which include fairness to defendants, finality, and judicial economy. *Duffy v. Horton Mem'l Hosp.*, 66 N.Y.2d 473, 477-78 (1985) ("We have emphasized that the primary purpose of a limitations period is fairness to a defendant . . . .[] There is also the need to protect the judicial system from the burden of adjudicating stale and groundless claims.") (citations omitted). There is nothing unfair or prejudicial about holding Mizrahi to the Guaranty, which he does not dispute executing. *See* Dkt. Nos. 38 ¶ 16; 141-1 ¶ 5; *see also 358 & 360 Atl. Ave. Holdings, LLC v. 358 Atl. Realty LLC*, No. 21-CV-168 (DG)(PK), 2023 WL 2969297, at *6 (E.D.N.Y. Mar. 1, 2023) ("by naming [the guarantor] in this action, Plaintiff has preserved its right to seek a deficiency judgment against [the guarantor] after the foreclosure sale"); *Letchworth Realty, LLC v. LLHC Realty, LLC*, No. 15-CV-6680 (FPG), 2020 WL 5361666, at *3 (W.D.N.Y. Sept. 8, 2020) ("New York law required the Lender to include the Guarantors in the foreclosure action if it wanted a deficiency judgment against them."); *Minin v. 2494 Amsterdam Ave. LLC*, No. 111122/10, 2011 N.Y. Slip Op. 32879(U), 2011 WL 5295204 (N.Y. Sup. Ct., N.Y. Cnty., Oct. 27, 2011) ("[A]n individual must be named as a defendant in the foreclosure action if the plaintiff

intends to hold that individual liable for any deficiency judgment obtained after the foreclosure judgment and sale."). Nor does allowing "relation back" and enforcement of the Guaranty against Mizrahi "increase the measure of liability to which the [he is] exposed.'" *EverHome Mortg. Co*., 2012 WL 868961, at \*11. Instead, it holds Mizrahi to the original liability for which he contracted (and was put on notice of by the Complaint); holding otherwise would countenance a windfall to him based on a technicality.

Because this Court finds that Plaintiff's First Amended Complaint relates back to the filing of the Complaint under New York state law, it need not evaluate whether relation back would also be appropriate under federal law.[7] *See Desir v. Austin*, No. 13-CV-912 (VMS), 2016 WL 1700386, at \*6 (E.D.N.Y. Apr. 27, 2016) (citing *Laureano v. Goord*, 2007 WL 2826649, at \*5-6 (S.D.N.Y. Sept. 4, 2007) ("Whether a claim relates back should be analyzed under both federal and state law, and whichever law that affords a more forgiving principle of relation back should be utilized.") (internal quotations omitted), *report and recommendation adopted*, 2007 WL 2852770 (S.D.N.Y. Sept. 28, 2007).

In light of the above, the Court need not address Plaintiff's arguments regarding the alleged "bad boy" nature of the Guaranty, the continuing wrong doctrine, or any equitable tolling of the statute of limitations. *See* Dkt. No. 150 at 11-13; *see also* Dkt. No. 121-10 § 1.2(a).

In sum, in consideration of the parties' submission and the totality of the record, the Court denies Mizrahi's Motion for summary judgment and dismissal of claims against him under the

---

[7] Nevertheless, the Court also concludes that, if Plaintiff's claims against Mizrahi under the Guaranty alleged in the First Amended Complaint were analyzed under the federal standard, such claims would relate back to the filing of the Complaint under Fed. R. Civ. P. 15(c)(1)(B). *See Slayton*, 460 F.3d at 228 (collecting cases in which relation back was permitted under federal standard because the "basic claim [had] arisen out of the conduct set forth in the original pleading.") (quoting *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 34 (2d Cir. 2002) (overruled by *Slayton* on other grounds)).

Guaranty on the basis of untimeliness, and grants Plaintiff's Motion for summary judgment as to Mizrahi's interest in the Property, and as to Mizrahi's liability under the Guaranty.

**B.     Plaintiff's Motion to Appoint a Receiver**

**i.     Standard of Review**

Federal Rule of Civil Procedure 66 "govern[s] an action in which the appointment of a receiver is sought."  Fed. R. Civ. P. 66; *see also Bristol Oaks, L.P. v. Werczberger*, No. 95 CV 3973 (FB), 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996) ("The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles."); *see also Greystone Bank v. Tavarez*, No. 09-CV-5192 (SLT) (JMA), 2010 WL 11651639, at *1 (E.D.N.Y. Apr. 26, 2010) (collecting cases discussing how federal law applies to receivership inquiries).

"[R]eceivership is 'traditionally used to protect the value of an asset that is the subject of litigation." *Federal Nat'l Mortg. Ass'n v. KRCM Astoria Portfolio Corporation*, No. 25-CV-1401 (NGG) (TAM), 2025 WL 2793646, at *3 (E.D.N.Y. Oct. 1, 2025) (internal quotation marks and citations omitted).  Appointment of a receiver in equity pursuant to Rule 66 in a diversity case is a remedy ancillary to the primary relief sought, the typical example of which is a plaintiff bringing a foreclosure action and requesting appointment of a temporary receiver pending foreclosure.  *See U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012) (citations omitted).  "Appointing a receiver constitutes an 'extraordinary remedy and . . . should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property.'" *1488 Bushwick, LLC*, 2024 WL 4728666, at *2 (quoting *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997)).

In deciding whether in deciding whether appointment of a receiver is merited, Courts consider the following non-exclusive factors:

> [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, [5] plaintiff's probable success in the action and [6] the possibility of irreparable injury to his interests in the property.

*Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 249-50 (quoting *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)); *see also* 12 Fed. Prac. & Proc. Civ. § 2983. Courts may also consider whether the property is inadequate security for the outstanding debt and the financial status of the debtor, but these two factors alone are insufficient to show that the appointment of a receiver is appropriate. *See Miss Jones LLC v. Stiles*, No. 17-CV-1450 (NSR), 2019 WL 3034906, at *2 (S.D.N.Y. July 10, 2019).

"A court weighing an applicant's request for a receivership should also consider whether there exists a contractual provision authorizing the appointment of a receiver." *Wilmington PT Corp. v. Tiwana*, No. 19-CV-2035 (DLI), 2020 WL 13158288, at *2-*3 (E.D.N.Y. Mar. 25, 2020) (citing *Greystone Bank*, 2010 WL 11651639, at *2). Indeed, "[T]he existence of a provision authorizing the application for a receiver in the event of a default, 'strongly supports the appointment of a receiver' when there is a default." *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 250 (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)); *see also D.B. Zwirn Special Opportunities Fund v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 490-91 (S.D.N.Y. 2008). Where such a provision exists, "and the mortgag[or] has consented to such appointment and repeatedly defaulted on conditions of the mortgage, the mortgag[or] 'bears the burden of demonstrating why a receiver should not be appointed.'" *Federal Nat'l Mortg. Ass'n v. 204 Ellery*

18

*St., LLC*, No. 23-CV-5343 (ENV) (RML), 2024 WL 2939179, at *3 (E.D.N.Y. Apr. 23, 2024) (quoting *D.B. Zwirn Special Opportunities Fund, L.P.*, 550 F. Supp. 2d at 491), *report and recommendation adopted*, 2024 WL 3716031 (Aug. 8, 2024). The existence of such a contractual provision, however, is not dispositive, and the appointment of a receiver is within a court's discretion. *See 1488 Bushwick, LLC*, 2024 WL 4728666, at *3 (citing *D.B. Zwirn Special Opportunities Fund*, 550 F. Supp. 2d at 491 and *Miss Jones*, 2019 WL 3034906, at *2).

### ii.    The Parties' Positions

In support of its motion to appoint a receiver, Plaintiff contends that the Loan Documents expressly authorize appointment of a rent receiver in case of 366 Realty's default. *See* Dkt. No. 142-30 at 28. Specifically, the Mortgage authorizes Plaintiff to

> apply for the appointment of a receiver . . . of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof[.]

*Id*. at 29 (quoting Dkt. No. 142-15 § 7.1(g)). Plaintiff notes that the ALR also expressly contemplates that a court-appointed receiver may enter the Property to collect rents or "dispossess Borrower and its agents and servants from the Property . . . and take possession of the Property and all books, records and accounts relating thereto . . . ." *Id*. (citing Dkt. No 142-16 § 1.1(g) and quoting § 3.1). Plaintiff asserts that the existence of such provisions favors its entitlement to appointment of a receiver. *Id*. at 29-30.

Further, Plaintiff contends that 366 Realty has failed to pay real estate taxes on the Property, property insurance premiums, and water, sewer, and other charges related to the Property—which has caused Plaintiff to advance hundreds of thousands of dollars for the same, while the Borrower misappropriates rental income from the Property, which Plaintiff estimates to

be in excess of $1,500,000 since May 2017.  *Id*. at 30; *see also* Dkt. Nos. 142-11 ¶¶ 28-33; 142-21 – 142-25.   Additionally, Plaintiff contends that 366 Realty's water and sewer charge delinquencies have resulted in the Property being listed on the "New York City lien sale list," which may result in a third-party lien purchaser foreclosing on the Property and impacting Plaintiff's recovery.  *See* Dkt. No. 142-30 at 30 (citing Dkt. Nos. 142-24; 142-25).   Plaintiff contends that 366 Realty's actions are damaging Plaintiff's interests in the Property, creating an imminent danger that the Property will be lost, injured or otherwise lessened in value, and that refusal to appoint a receiver would work greater prejudice to Plaintiff than doing so would to 366 Realty.  *Id*. at 30-31.  Indeed, according to Plaintiff, any such hardship to 366 Realty is mitigated by the fact that the Loan Documents explicitly contemplated remitting to Plaintiff all post-default rental income from the Property.  *See* Dkt. No. 151 at 6.

Plaintiff further alleges that the financial status of 366 Realty is "seriously in question[,]" that there is likely to be a substantial post-foreclosure deficiency, and that legal remedies available to Plaintiff are inadequate.  Dkt. No. 142-30 at 32.  Plaintiff states that appointment of a receiver would be beneficial for tenants as well, provide transparency and regular monthly reporting, which would help maintain the Property's value.  Plaintiff requests that the Court appoint Sanjay Gandhi of Besen Partners to be the rent receiver and in support, attaches a PowerPoint presentation providing information regarding Mr. Gandhi and Besen Partners.  *Id*. at 33; Dkt. No. 142-29.

In opposition, 366 Realty and Mizrahi assert that Plaintiff fails to prove that appointing a receiver is necessary to protect Plaintiff's interest in the Property or to meet the exacting federal standard for such relief.  *See* Dkt. No. 149-1.  Specifically, 366 Realty and Mizrahi state that the burden is on Plaintiff to demonstrate the necessity of a receiver, and that Plaintiff has not done so, nor provided evidence of the likelihood of a post-foreclosure sale deficiency or deterioration of

the Property.  *Id.* at 4, 5.  Instead, 366 Realty and Mizrahi state that Mizrahi is diligent in his maintenance of the Property, and that he has made various repairs to the Property's boilers, residential units, and exterior, often at his own expense.  *See* Dkt. No. 149-2 ¶¶ 11-14.

366 Realty and Mizrahi also contend that Plaintiff has not provided adequate evidence of the qualifications of its proposed receiver, Sanjay Gandhi of Besen Partners.  *Id.* at 6.  Further, they allege that Plaintiff's proposed order appointing a receiver is overly broad and onerous in light of the Property's size, that such demands for remittance by 366 Realty of security deposits and other funds and documents are premature, prior to the Court's qualification of any receiver, and that any claim to rents is limited to those due after default.  *Id.* at 7; *see also* Dkt. No. 142-1. 366 Realty and Mizrahi state that, while Fed. R. Civ. P. 66 applies to motions to appoint a receiver in federal court, the Court must apply specific New York statutes regarding receivership, including R.P.A.P.L. §1325 and the requirements set forth therein.  *Id.* at 7-8.

### iii.    Appointment of a Receiver is Proper

Here, in consideration of the relevant factors, the Court determines that appointment of a receiver is "clearly necessary to protect [P]laintiff's interests in the property."  *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 254 (quoting *Nyland,* 839 F.2d at 97).  Each equitable factor will be addressed in turn.

### a.    Fraudulent Conduct by the Defendant

Plaintiff does not contend that 366 Realty or Mizrahi have committed fraudulent conduct. Nevertheless, "courts have 'appointed receivers even where there was no evidence of fraud.'" *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 250 (quoting *D.B. Zwirn Special Opportunities Fund,* 550 F.Supp.2d at 491 & n. 64); *see also U.S. Bank Nat'l Ass'n as Trustee for Registered Holders of Wells Fargo Com. Mortg. Sec., Inc. v. 1078 Whillmore LLC*, 740 F. Supp. 3d 157, 177

(E.D.N.Y. 2024) (appointing receiver despite no allegations of fraud); *United States v. Trusty Capital, Inc.*, No. 06-CV-8170 (KMK), 2007 WL 44015, at *8 (S.D.N.Y. Jan. 5, 2007)).  "The lack of evidence of fraud does not provide a basis for denying relief; rather, this factor does not weigh for or against Plaintiff's motion."  *KRCM Astoria Portfolio Corporation*, 2025 WL 2793646, at *5.

> **b.    Imminent Danger to the Property and Inadequacy of Available Legal Remedies**

"Factors two and three require the Court to examine any imminent danger to the property and whether the available legal remedies are adequate."  *KRCM Astoria Portfolio Corporation*, 2025 WL 2793646, at *6 (citing *1488 Bushwick, LLC*, 2024 WL 4728666, at *4); *see also Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (observing that "the existence of any imminent danger of the diminution of the value of the properties . . . is a critical factor in the analysis of whether to appoint a receiver").

Here, Plaintiff asserts that the Property is in imminent of danger of being diminished in value because of 366 Realty's failure to pay real estate taxes on the Property, property insurance premiums, and water, sewer, and other Property-related charges, such as municipal violations from the ECB.  Dkt. No. 148.  *See* Dkt. Nos. 142-30 at 20, 30-31; 121-3 § 8.1(a) ("Event of Default"); *see also* 142-11 ¶¶ 28-33; 142-21 – 142-25.  To prevent financial harm to the Property and diminution of Plaintiff's interest therein, Plaintiff has been covering many of the Property's operating costs since 366 Realty's default.  For instance, this Court determined that Plaintiff had been forced to pay $107,020.78 in the Property's real estate taxes, as of July 2023.  *See* Dkt. No. 95 at 16; *see also* Dkt. No. 142-21.  Plaintiff had also paid $10,736.58 in insurance premiums, as of July 2023, to prevent a lapse in coverage for the Property.  *See* Dkt. No. 95 at 16; *see also* Dkt. No. 142-21.  Since July 2023, Plaintiff has advanced at least an additional $51,411.84 in real estate

taxes and 33,304.25 in insurance premiums on 366 Realty's behalf.  *See* Dkt. No. 142-11 ¶¶ 29, 31; *see also* 142-22, 142-23.  Under the Loan Agreement, Plaintiff is entitled to reimbursement of these costs, which are ordinarily borne by 366 Realty.  *See* Dkt. No. 121-3 §§ 1.1, 9.3.  Moreover, in spite of the 366 Realty's post-default obligation to turn over rents to Plaintiff, *see* Dkt. Nos. 121-8 § 7.1(h); 121-9 § 3.1, 366 Realty has failed to do so, nor has it paid the basic expenses described above.

"Plaintiff's concerns that Defendants will continue to endanger the Property are compelling, particularly given the number of violations from a myriad of government agencies." *KRCM Astoria Portfolio Corporation*, 2025 WL 2793646, at *6; *see also 1078 Whillmore LLC*, 740 F. Supp. 3d at 177-78 (finding danger to the property and the plaintiff's limited ability to recover supported receivership where the property was subject to two ECB judgments and six DOB violations); *1488 Bushwick, LLC*, 2024 WL 4728666, at *4 (finding 73 open HPD violations and 17 ECB judgments against the property supported receivership).

In consideration of Plaintiff's advancement of funds for the Property's operating costs, and the substantial number of municipal violations accrued under 366 Realty's watch, as more fully detailed in the undersigned's September 27, 2025 Report and Recommendation, *see* Dkt. No. 159, Plaintiff's legal remedies, including reimbursement of these costs from 366 Realty or Mizrahi, may be limited.  *See KRCM Astoria Portfolio Corporation*, 2025 WL 2793646, at *7.  Indeed, the existence of the equitable remedy of foreclosure is inadequate to prevent such harms to Plaintiff's interest in the Property.

Accordingly, these factors weigh in favor of receivership.

### c.    Balance of Harms

Here, the balance of harms favors appointment of a receiver.  *See Sovereign Bank v. 347 East 173 LLC*, No. 11-CV-1061 (LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) (granting motion to appoint a receiver where "Borrowers' continued management will irreparably harm Plaintiff's interest in the Mortgaged Properties").

Significantly, the Amended Mortgage explicitly provides for appointment of a receiver. *See* Dkt. No. 142-15 § 7.1(g) (Upon 366 Realty's default, Plaintiff may "apply for the appointment of a receiver . . . of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of [366 Realty], any guarantor or indemnitor with respect to the Loan . . . .").  It is also undisputed that 366 Realty has been in default under the Loan Documents since 2017.  *See* Dkt. No. 38 ¶ 31.  The Second Circuit has noted that "[i]t is entirely appropriate for a mortgage holder to seek the appointment of a receiver where the mortgage authorizes such appointment, and the mortgagee has repeatedly defaulted on conditions of the mortgage which constitute one or more events of default." *Nyland*, 839 F.2d at 97.  Indeed, "[366 Realty] contractually consented to the appointment of a receiver in the mortgage agreement and '[t]here is little hardship in enforcing the terms of the parties' bargain.'"  *Greystone Bank*, 2010 WL 11651639, at *2 (quoting *New York Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 293 (E.D. Cal. 1991)); *see also Sovereign Bank v. 347 E. 173 LLC*, No. 11-CV-1061 (LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011) ("It is undisputed that several events of default have occurred, including non-payment of monthly installments and failure to pay real estate taxes, which "strongly supports the appointment of a receiver.") (quoting *Nyland*, 839 F.2d at 97); *see also* N.Y. Real Prop. Law § 254(10); *Greystone Bank*, 2010 WL 11651639, at *2 (granting motion

24

to appoint a receiver, where same permitted by mortgage, and borrower defaulted, failed to pay real estate tax and insurance costs, and misappropriated building rental income).

This factor thus also weighs in favor of receivership.

### d.    Plaintiff's Probable Success

Plaintiff has also demonstrated a probability of success on the merits.  Defendant 366 Realty admitted that it is in default and has not cured the same, *see* Dkt. No. 38 ¶ 31, and this Court granted summary judgment against 366 Realty in 2021, *see* Dkt. No. 58.  Plaintiff has accordingly "proffered sufficient evidence to illustrate its 'probable success in the action.'" *KRCM Astoria Portfolio Corporation*, 2025 WL 2793646, at *7 (quoting *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quotation marks omitted)).  Indeed, "[a] receiver is needed to safeguard [Plaintiff's] interest in the [P]roperty during the pendency of this foreclosure action and to ensure that the rental income paid by the tenants in the building is applied to the principal and interest due in accordance with the provisions of the mortgage agreement."  *Greystone Bank*, 2010 WL 11651639, at *2.

This factor thus weighs in favor of receivership as well.

### e.    Possibility of Irreparable Injury to Plaintiff's Property Interests

In light of the totality of circumstances, this Court holds that Plaintiff's interest in the Property may be irreparably injured unless a receiver is appointed.  As noted above, Plaintiff has alleged that 366 Realty is unable failed to take basic care of the Property, including failure to pay real estate taxes, property insurance premiums, and water, sewer, and other Property-related charges.  366 Realty's mismanagement of the Property led to two Criminal Court judgments being entered against it, *see* Dkt. No. 121-19, as well as multiple municipal violations from the ECB, *see* Dkt. No. 121-20.  *See also* Dkt. Nos. 142-30 at 20, 30-31; 142-11 ¶¶ 28-33; 142-21 – 142-25.

Further weighing in favor of appointment of a receiver is the fact that 366 Realty allowed the aforementioned water and sewer charges to go unpaid for so long and accrue to such a point that the Property was listed on a "New York City lien sale list," whereby the debt would be sold to a third party, and potentially further diminishing Plaintiff's interest in the Property. *See* Dkt. Nos. 142-24; 142-25). It is clear that 366 Realty and Mizrahi's management of the Property has left it in "imminent danger of the diminution of the value" of the same. *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d at 250; *see also Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2007 WL 2769490, at *1 (E.D.N.Y. Sept. 21, 2007).

***

In sum, in consideration of the explicit receivership provisions in the Loan Documents, 366 Realty's acknowledgment of its default, and the balance of equitable factors weighing in favor of receivership, the Court finds that appointment of a receiver is warranted.

### iv.    Appointment of Sanjay Ghandi of Besen Partners as Receiver

While the Court grants Plaintiff's Motion insofar as the request to appoint a receiver, it declines to enter Plaintiff's proposed order, *see* Dkt. No. 142-1, and finds insufficient the information Plaintiff has supplied regarding its proposed receiver of Mr. Gandhi of Besen Partners. *See* Dkt. No. 142-29. By October 22, 2025, Plaintiff shall file a letter containing further details regarding the qualifications of Mr. Gandhi, including how his proposed role as a receiver is consistent with the requirements of federal receiverships and New York law, and support for the reasonableness of any fees charged by him. *See 204 Ellery St.*, 2024 WL 2939179, at *4 (describing parameters for an appointed receiver). Plaintiff shall also address Mr. Gandhi's involvement (if any) in other lawsuits in this Circuit and how such lawsuits impact his ability to serve as a receiver herein. *See, e.g., U.S. Bank, Nat'l Ass'n for Registered Holders of WAMU Com.*

*Mortg. Sec. Tr. 2007-SL2, Com. Mortg. Pass-Through Certificates, Series 2007-SL2 v. R N R Mgmt., LLC*, No. 12-CV-1899 (SLT) (VMS), 2016 WL 11395003, at *5 (E.D.N.Y. Jan. 5, 2016), *report and recommendation adopted*, 2016 WL 3020868 (E.D.N.Y. May 24, 2016); *Nesbeth v. New York City Mgmt. LLC*, No. 17-CV-8650 (JGK), 2019 WL 110953, at *1 (S.D.N.Y. Jan. 4, 2019). Defendants 366 Realty and Mizrahi shall respond to Plaintiff's letter by October 29, 2025.

Additionally, Plaintiff and Defendants 366 Realty and Mizrahi are directed to meet and confer in good faith and file a letter by October 29, 2025, proposing a sensible and expedient transition of management of the Property from 366 Realty and Mizrahi to such receiver as the Court shall duly appoint, including any pertinent details noted in Plaintiff's proposed order, *see* Dkt. No. 142-1.

### III.    <u>Conclusion</u>

For the foregoing reasons, Mizrahi's Motion is DENIED and Plaintiff's Motion is GRANTED in part and DENIED in part.

Dated:        Brooklyn, New York
              October 15, 2025                    **SO ORDERED.**

                                                   _/s/ Joseph A. Marutollo_
                                                  JOSEPH A. MARUTOLLO
                                                  United States Magistrate Judge