UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
WELLS FARGO BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR THE HOLDERS OF COMM 2014-
UBS6 MORTGAGE TRUST COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES, BY
AND THROUGH ITS SPECIAL SERVICER, LNR
PARTNERS LLC,

**REPORT AND
RECOMMENDATION**

      Plaintiff,

    v.

366 REALTY LLC; JOSHUA MIZRAHI; CRIMINAL
COURT OF THE CITY OF NEW YORK; NYC
ENVIRONMENTAL CONTROL BOARD; NEW
YORK CITY DEPARTMENT OF FINANCE; and
KASSIN SABBAGH REALTY LLC,

      Defendants.
---------------------------------------------------------------------X

17-CV-3570
(Matsumoto, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On June 13, 2017, Plaintiff Wells Fargo Bank National Association, as Trustee for the

Holders of COMM 2014-UBS6 Mortgage Trust Commercial Mortgage Pass-Through Certificates,

by and through its special servicer, LNR Partners LLC, filed this foreclosure action against

Defendants 366 Realty LLC ("366 Realty"); Joshua Mizrahi ("Mizrahi"); the Criminal Court of

the City of New York (the "Criminal Court"); NYC Environmental Control Board ("ECB"); New

York City Department of Finance ("DOF"); and Kassin Sabbagh Realty LLC ("Kassin"); as well

as several other defendants who were thought to possess or claim an interest in or a lien upon the

real property located at 366 Knickerbocker Avenue, Brooklyn, New York 11237 (the "Property").

*See* Dkt. No. 1.  Extensive litigation followed.  On March 16, 2021, the Court granted Plaintiff's

motion for summary judgment against 366 Realty, finding that Plaintiff was entitled to foreclosure.

Dkt. No. 58.  On October 15, 2025, the Court granted in part Plaintiff's motion for summary

judgment against Defendants 366 Realty and Mizrahi[1] as to Mizrahi's interest in the Property. *See* Dkt. No. 162. On November 19, 2025, the Court appointed a receiver for the Property. *See* Dkt. No. 169.

Currently pending before this Court, on a referral from the Honorable Kiyo A. Matsumoto, United States District Judge, is Plaintiff's motion seeking judgment of foreclosure, sale, and other relief. *See* Dkt. No. 177; Text Order, dated Feb. 2, 2026. Specifically, Plaintiff's motion seeks foreclosure and sale to satisfy all sums due to Plaintiff, namely, "(i) $3,603,179.68, plus interest accruing at a daily rate of $622.58 . . . from July 31, 2023 through the entry of Judgment [o]f Foreclosure and Sale [a]nd Other Relief, (ii) advances by Plaintiff subsequent to July 31, 2023 in the amount of $140,769.34, and (iii) attorney fees and disbursements in the amount of $567,054.08, with post judgment interest to accrue thereon," as well as "such other and further relief as the Court may deem just and proper." Dkt. No. 177-3 at 14.[2]

For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part.

## I.    **Relevant Background**

The Court presumes the parties' familiarity with this matter. The Court recites only the relevant facts and procedural history below.

On November 6, 2014, 366 Realty executed a loan agreement (the "Loan Agreement") obtaining a loan (the "Loan") for $2,200,000 from Cantor Commercial Real Estate Lending, L.P.

---

[1] Defendants 366 Realty and Mizrahi are the only active defendants remaining in this action. On February 20, 2025, the Court entered default judgment as to Kassin. *See* Dkt. No. 118. On October 17, 2025, the Court entered default judgment against the Criminal Court and ECB, but denied, without prejudice, default judgment as to the DOF. *See* Dkt. No. 163. On June 5, 2026, Plaintiff filed a notice of discontinuance against the DOF, without prejudice. *See* Dkt. No. 186.

[2] Page citations are to the ECF-stamped pages unless otherwise noted.

2

(the "Original Lender"). Dkt. No. 38 ¶ 6; Dkt. No. 121 ¶¶ 13-14; Dkt. No. 121-3; *see also* Dkt. No. 87-4. Next, 366 Realty signed and delivered an Amended, Restated, and Consolidated Promissory Note (the "Note"). Dkt. No. 38 ¶ 7; Dkt. No. 121 ¶¶ 14-15; Dkt. No. 121-4. The indebtedness owed under the Note is secured by the Property, as outlined in the Mortgage Security Agreement and Assignment of Leases and Rents ("Original Mortgage"). Dkt. No. 38 ¶ 9; Dkt. No. 121 ¶ 16; Dkt. No. 121-5.

After numerous assignments, the indebtedness owed under the Note was further secured by the Property, as evidenced by the Amended, Restated, and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated November 6, 2014 (the "Amended Mortgage"). Dkt. No. 38 ¶¶ 10-12; Dkt. No. 121 ¶¶ 17-22; *see also* Dkt. No. 87-6. The Amended Mortgage granted the Original Lender a first-priority lien on the Property. Dkt. No. 38 ¶¶ 13-14; Dkt. No. 121 ¶¶ 23-25; Dkt. No. 121-8.

As a further source of repayment for the obligations owed by 366 Realty, including its obligations under the Note, 366 Realty executed an Assignment of Leases and Rents (the "ALR"). Dkt. No. 38 ¶ 15; Dkt. No. 121 ¶¶ 26-27; Dkt. No. 121-9. Mizrahi also allegedly guaranteed repayment of the Loan pursuant to a Guaranty of Recourse Obligations, dated November 6, 2014 (the "Guaranty"). Dkt. No. 38 ¶ 16; Dkt. No. 121 ¶ 28; Dkt. No. 121-10.

In December 2014, the Original Lender assigned and transferred all rights, title, and interest in the Loan Agreement, Note, ALR, Guaranty, and Amended Mortgage (collectively, the "Loan Documents") to Plaintiff. Dkt. No. 38 ¶¶ 17-18; Dkt. No. 121 ¶¶ 29-30; Dkt. No. 121-11. The Amended Mortgage provided for appointment of a receiver. *See* Dkt. No. 142-15 § 7.1(g) (stating that, upon 366 Realty's default, Plaintiff may "apply for the appointment of a receiver . . . of the Property, without notice and without regard for the adequacy of the security for the Debt and

3

without regard for the solvency of [366 Realty], any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof"). It is undisputed that 366 Realty has been in default under the Loan Documents since 2017. *See* Dkt. No. 38 ¶ 31; Dkt. No. 121 ¶ 36. Plaintiff thereafter accelerated the Note on April 3, 2017. *See* Dkt. No. 58 at 7; Dkt. No. 121 ¶¶ 42-43; Dkt. No. 121-18; Dkt. No. 150 at 5.

Plaintiff commenced this foreclosure action on June 13, 2017. Dkt. No. 1. On March 16, 2021, the Court granted Plaintiff's motion for summary judgment against 366 Realty, finding that Plaintiff was entitled to foreclosure. Dkt. No. 58; *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (SJ) (RER), 2021 WL 9494173 (E.D.N.Y. Mar. 16, 2021).

Litigation then continued, which included Plaintiff's filing of its First Amended Complaint on April 19, 2023. *See* Dkt. No. 70. On January 15, 2024, the undersigned issued a Report and Recommendation, which recommended that Plaintiff's motion to fix indebtedness be granted in part and denied in part. Dkt. No. 95. Specifically, the undersigned recommended that Plaintiff be awarded $3,603,179.68 plus interest accruing at a daily rate of $622.58 from July 31, 2023 through the entry of Judgment of Foreclosure, as set forth in more detail below:

| | |
|---|---|
| Principal | $2,071,999.91 |
| Contract Interest | $528,315.34 |
| Default Interest | $741,227.18 |
| Late Fees | $109,595.84 |
| Advances | $117,756.86 |
| Interest on Advances | $0.00 |
| Financial Statement Fees | $35,000.00 |
| Liquidation Fees | $0.00 |
| Servicer Fee | $0.00 |
| Credit | -$715.45 |
| **Total** | $3,603,179.68 |

4

*Id.* at 20.  On March 26, 2024, Judge Matsumoto adopted in full the undersigned's January 15, 2024 Report and Recommendation, thereby granting in part and denying in part Plaintiff's motion to fix indebtedness.  Dkt. No. 101.

On February 20, 2025, the Court granted default judgment as to Defendant Kassin but denied Plaintiff's motion for default judgment as to Defendants Mizrahi, the Criminal Court, ECB, and DOF.  *See* Dkt. No. 118.  The Court directed Plaintiff to file a Second Amended Complaint to address pleading deficiencies.  *Id.* at 24.

On February 28, 2025, Plaintiff filed the Second Amended Complaint.  Dkt. No. 121. Defendants 366 Realty and Mizrahi answered the Second Amended Complaint on March 10, 2025. Dkt. No. 128.

On September 27, 2025, the undersigned entered a Report and Recommendation recommending that the Court grant in part and deny in part Plaintiff's motion for default judgment regarding Defendants the Criminal Court, ECB, and DOF, which the Court adopted on October 17, 2025.  *See* Dkt. Nos. 159, 163.  The Court granted default judgment as to the Criminal Court and ECB, and denied, without prejudice, default judgment as to the DOF.  *See* Dkt. No. 163.  The Clerk of the Court entered default judgment in Plaintiff's favor against the Criminal Court and ECB.  *See* Dkt. No. 165.

On October 15, 2025, the Court denied Defendant Mizrahi's motion for summary judgment and granted in part and denied in part Plaintiff's motion for summary judgment.[3]  *See* Dkt. No. 162.  Specifically, the Court denied Defendant Mizrahi's motion for summary judgment and dismissal of claims against him under the Guaranty.  *Id.* at 16-17.  The Court also granted Plaintiff's motion for summary judgment as to Defendant Mizrahi's liability under the Guaranty.

---

[3] Plaintiff and Defendants 366 Realty and Mizrahi consented to the jurisdiction of the undersigned to adjudicate those motions.  Dkt. No. 147.

5

*Id.* Additionally, the Court found that appointment of a receiver was warranted. *Id.* at 17-27. The Court, however, did not grant Plaintiff's motion insofar as it sought to appoint Mr. Sanjay Gandhi as a receiver, for the reasons set forth in its Memorandum and Opinion. *See id.* at 26-27. The Court directed Plaintiff and Defendants to meet and confer in good faith and file a letter by October 29, 2025, proposing a sensible and expedient transition of management of the Property from Defendants to such receiver as the Court shall duly appoint. *See id.* at 27.

Following additional submissions, on November 19, 2025, the Court appointed Mr. Gandhi as receiver of all rents and profits from the Property as outlined in the Court's Order Appointing a Rent Receiver. Dkt. No. 169. Plaintiff has provided the Court with status updates regarding the receivership thereafter. *See* Dkt. Nos. 173, 175, 180, 181, 182, 183.

The Court subsequently set a briefing schedule for Plaintiff's motion for final judgment of foreclosure and sale. *See* Text Order, dated Dec. 9, 2025. The Court ordered Plaintiff to serve on Defendants (and not file) its motion by December 18, 2025; Defendants to serve any opposition thereto no later than January 19, 2026; and Plaintiff to serve its reply by February 2, 2026. *Id.* For the convenience of the Court, the parties were ordered to file all motion papers on the docket on February 2, 2026, in the manner of a bundled filing. *Id.*

On February 2, 2026, Plaintiff filed its motion, as well as a proposed order of judgment. *See* Dkt. Nos. 177, 178-1.[4] As Plaintiff noted in a February 2, 2026 letter, Defendants did not oppose or otherwise respond to Plaintiff's motion. Dkt. No. 179. The Court subsequently ordered Defendants to show cause as to why they failed to respond to Plaintiff's motion. *See* Text Order,

---

[4] Also on February 2, 2026, Plaintiff filed a letter noting that, since serving its motion on December 18, 2025, Plaintiff "identified certain administrative provisions in the previously served proposed Order that required amending to ensure compliance with federal law and the internal procedures of the U.S. Marshals Service . . . for the Eastern District of New York." Dkt. No. 178 at 1. Plaintiff described such changes and filed a clean copy and red-lined copy of an amended proposed order of final judgment. *Id.* at 1-2; Dkt. Nos. 178-1, 178-2.

dated May 17, 2026. On May 19, 2026, Defendants 366 Realty and Mizrahi filed their response. Dkt. No. 184. Defendants, "having reconciled themselves with the inability to redeem their sole asset, and seeking to minimize any potential deficiency claim, had elected not to oppose the application." *Id.* at 1. Defendants 366 Realty and Mizrahi also stated that "[i]t is not disputed that had the initial complaint been proper, Plaintiff would be entitled to the unpaid principal and advances for taxes, less the sums collected by the referee, interest for a reasonable period, and such legal fees as this Court deems reasonable under the circumstances," but argue that the attorneys' fees sought against Defendants are not reasonable. *Id.* at 2. Defendants cite *Yagui v. Republic Bar & Lounge Inc.*, No. 25-CV-2674 (MKB), 2026 WL 1296762 (E.D.N.Y. May 12, 2026), in opposition to Plaintiff's application. *See* Dkt. No. 184 at 2.

On June 5, 2026, the Court held a status conference. *See* Minute Entry, dated June 5, 2026. The Court ordered Plaintiff and Defendants 366 Realty and Mizrahi to confer regarding a proposed referee for the sale of the Property and file a joint letter addressing a single proposed referee, including the proposed referee's qualifications, and the additional advances requested by Plaintiff. *Id.* The Court also ordered Plaintiff to file an amended proposed order of foreclosure and sale and other relief and a notice of discontinuance as to the DOF. *See id.* Plaintiff filed the notice of discontinuance as to the DOF the same day. *See* Dkt. No. 186. The DOF was terminated from this action on the same day. Text Order, dated June 5, 2026.

On June 8, 2026, Plaintiff filed a letter indicating that the parties agreed to name Domenick Napoletano, Esq., as a referee for the sale of the Property. *See* Dkt. No. 187. Plaintiff also filed an amended proposed order of judgment of foreclosure and sale and other relief. *See* Dkt. No.

7

189.[5]  The Court will consider the amended proposed order of final judgment at Dkt. No. 189 as

Plaintiff's operative proposed order.

## II.    Discussion

### A.    Judgment of Foreclosure and Sale

As Plaintiff notes, the Court has already awarded Plaintiff $3,603,179.68 plus interest

accruing at a daily rate of $622.58 from July 31, 2023, through the entry of Judgment of

Foreclosure.  *See* Dkt. No. 95 at 20; Dkt. No. 101 at 4; Dkt. No. 177-3 at 14.  Defendants concede

this point, as they have not opposed that portion of Plaintiff's motion.  *See* Dkt. No. 184.  The

undersigned respectfully recommends that Plaintiff is therefore entitled to $3,603,179.68 plus

interest accruing at a daily rate of $622.58 from July 31, 2023 through the entry of Judgment of

Foreclosure.

Additionally, the undersigned respectfully recommends that Plaintiff is entitled to

advances made by Plaintiff subsequent to July 31, 2023 in the amount of $140,769.34.  Dkt. No.

177-3 at 14.  As detailed in an affidavit from Edward Birsic (an asset manager at LNR Partners

LLC, the special servicer of the loan held by Plaintiff), Plaintiff advanced funds for insurance and

real estate taxes for the Property on behalf of 366 Realty, which failed to stratify those obligations.

*See* Dkt. No. 177-1.  According to Plaintiff, 366 Realty "continued to fail to pay real estate taxes

and insurance for the" Property after July 31, 2023; those payments are: $50,008.83 in insurance

and $90,760.51 in real estate taxes.  *See id.* ¶ 7; Dkt. No. 177-2 (detailing the insurance and real

estate taxes paid on the Property between August 1, 2023 and December 1, 2025).  Again,

Defendants do not oppose this argument.  *See* Dkt. No. 184.  Plaintiff confirmed that those

---

[5] Plaintiff initially incorrectly filed the proposed order as a "Consent to Magistrate Judge Disposition on Motion" on the docket on June 8, 2026.  *See* Dkt. No. 188.  Per the Court's directive, *see* Text Order, dated June 11, 2026, Plaintiff re-filed the corrected document on June 11, 2026.  *See* Dkt. No. 189.

$140,769.34 in advances "were incurred well before the Receiver's appointment" and "[t]hey bear no relation to any amounts paid or to be paid during the receivership period and were not funded from receivership proceeds." Dkt. No. 187 at 2. "To date, no moneys have been disbursed to Plaintiff from the receivership funds, and the receivership is not generating any surplus or excess revenue." *Id.* "Courts in this Circuit allow plaintiffs in foreclosure actions to recover such protective advances where the plaintiff submits sufficient documentation to prove the accuracy of its claims." *Wells Fargo Bank v. 5615 N. LLC*, No. 20-CV-2048 (VSB) (KHP), 2023 WL 7394340, at *7 (S.D.N.Y. May 4, 2023) (citation omitted) (collecting cases), *report and recommendation adopted*, 2023 WL 1778788 (E.D.N.Y. Feb. 6, 2023). Accordingly, the undersigned respectfully recommends that Plaintiff is entitled to $140,769.34 in advances.

Next, the undersigned respectfully recommends the appointment of Mr. Napoletano as referee for the sale of the Property. "[C]ourts regularly appoint referees in cases of mortgage foreclosures and sales." *Windward Bora, LLC v. Brown*, No. 21-CV-3147 (KAM) (RER), 2022 WL 875100, at *5 (E.D.N.Y. Mar. 24, 2022) (citation omitted). As Plaintiff describes, Mr. Napoletano is "a widely respected and highly decorated member of the New York legal community." Dkt. No. 187 at 1. Mr. Napoletano has "served in numerous distinguished leadership positions within the bar, including as Treasurer of the New York State Bar Association (2018–2022), Past President of the Brooklyn Bar Association and the Brooklyn Bar Foundation, Co-Chair of the NYSBA Civil Practice Law & Rules Section, and Past Member of the Grievance Committee for the 2nd, 11th, and 13th Judicial Districts, among many other roles." *Id.* He received the 2019 St. Thomas More award and various other accolades. *See Domenick Napoletano Esq*, Napoletano Law, https://www.napoletanolaw.com/#biography (last visited June 15, 2026). Mr. Napoletano appears to be well-qualified to serve as referee here. The undersigned respectfully recommends

9

that Mr. Napoletano be appointed as the referee to sell the Property and compensated for his appointment in compliance with New York Civil Practice Law and Rule ("CPLR") § 8003. The auction of the Property shall occur in compliance with N.Y. Real Prop. Acts. Law §§ 231, 1351.

Plaintiff also requests post-judgment interest from the date judgment is entered until the date the judgment is satisfied. *See* Dkt. No. 177-3 at 14; Dkt. No. 189 at 2. Courts have held that post-judgment interest at the statutory rate under 28 U.S.C. § 1961(a) is mandatory. *See Windward Bora LLC v. Ingber*, No. 21-CV-3308, 2023 WL 6385815, at *5 (E.D.N.Y. Sep. 29, 2023) (Matsumoto, J.) ("In accordance with 28 U.S.C. § 1961(a), Plaintiff shall also be awarded post-judgement interest, which is calculated based on the weekly average one-year constant maturity Treasury yield for the week preceding the date on which judgment is entered." (citing *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) (noting that "postjudgment interest is governed by federal statute," 28 U.S.C. § 1961(a), and that "we have consistently held that an award of postjudgment interest is mandatory"))). The undersigned therefore respectfully recommends that Plaintiff be awarded post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961, "running from the date judgment is entered until the judgment is satisfied, presumably by the foreclosure sale." *Brown*, 2022 WL 875100, at *5 (citation omitted).

Accordingly, in light of the above, the undersigned respectfully recommends that the Court enter a Judgement of Foreclosure and Sale in a form substantially similar to that proposed by Plaintiff at Dkt. No. 189.

## B.    Attorneys' Fees and Costs

Plaintiff seeks attorneys' fees and costs in the amount of $567,054.08. Dkt. No. 177-3 at 12. Plaintiff argues that "[p]ursuant to Section 5.1.14 of the Loan Agreement and Sections 1.3 and 7.3 of the Mortgage, in the event the Lender commences an action to enforce its rights under the

Loan Documents, the Borrower [(366 Realty)] is required to pay the Lender's attorneys' fees, expenses, and court costs." *Id.* at 10; *see also* Dkt. No. 87-4 at 58 (Section 5.1.14 of the Loan Agreement); Dkt. No. 87-6 at 9-10, 18-19 (Amended, Restated, and Consolidated Mortgage); Dkt. No. 95 at 19 (noting that "[a]s a preliminary matter, the Loan Agreement and the Mortgage provide Plaintiff with the right to seek an award of attorneys' fees and costs." (citations omitted)). The Court will address Plaintiff's specific requests for attorneys' fees and costs, in turn, below.

### 1.    Legal Standard

"New York state law governs the substantive right to attorneys' fees in a foreclosure action." *Ingber*, 2023 WL 6385815, at *5 (quoting *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("[s]tate law creates the substantive right to attorney's fees")). "Since there is no statute in New York authorizing the recovery of an attorney's fee in a mortgage foreclosure action, such a fee may only be recovered if it is contractually authorized." *PHH Mortg. Corp. v. Khan*, No. 25-CV-2925 (DLI) (LGD), 2026 WL 41169, at *7 (E.D.N.Y. Jan. 6, 2026) (quoting *Vigo v. 501 Second St. Holding Corp.*, 994 N.Y.S.2d 354, 356 (2d Dep't 2014)), *report and recommendation adopted*, Text Order, dated Mar. 31, 2026; *see also Ingber*, 2023 WL 6385815, at *5 ("Under New York law, attorneys' fees may only be awarded 'under a valid contractual authorization.'" (quoting *Mid-Hudson Catskill Rural Migrant Ministry*, 418 F.3d at 177)); *CIT Bank N.A. v. Gordon*, No. 17-CV-3972 (ADS) (SIL), 2020 WL 4587446, at *2 (E.D.N.Y. May 10, 2020) ("Under New York law, attorneys' fees in mortgage foreclosure actions may only be recovered if they are contractually authorized, as there is no statute in New York providing for the recovery of attorneys' fees in such actions." (citation omitted)), *report and recommendation adopted*, 2020 WL 2711420 (E.D.N.Y. May 26, 2020). Indeed, "[a] plaintiff in a foreclosure action may recover attorneys' fees and costs against a mortgagor if the

11

note or mortgage allows for such an award." *Freedom Mortg. Corp. v. Ervin*, No. 18-CV-1082 (ENV) (SMG), 2019 WL 2436298, at *8 (E.D.N.Y. Feb. 12, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 2511873 (E.D.N.Y. June 18, 2019).

Even where fees and costs are authorized, "[a]n award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." *Axos Bank v. 64-03 Realty LLC*, No. 20-CV-3549 (RPK) (CYP), 2026 WL 764476, at *7 (E.D.N.Y. Mar. 18, 2026) (quoting *Lupo v. Anna's Lullaby Cafe, LLC*, 138 N.Y.S.3d 103, 106 (2d Dep't 2020)); *see also Exec. Risk Indem., Inc. v. Fieldbridge Assocs., LLC*, 642 F. App'x 25, 25 (2d Cir. 2016) (same) (citations omitted). "In determining a fee award, the typical starting point is the so-called lodestar amount, that is 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) (citation omitted); *see also Hennessy ex rel. Hennessy v. 194 Bedford Ave. Rest. Corp.*, No. 21-CV-5434 (FB) (RML), 2022 WL 4134502, at *6 (E.D.N.Y. Aug. 8, 2022) ("The starting point for determining the presumptively reasonable fee award is the 'lodestar' amount, which is 'the product of a reasonable hourly rate and the reasonable number of hours required by the case.'" (citation omitted)), *report and recommendation adopted*, 2022 WL 4134437 (E.D.N.Y. Sep. 12, 2022).

"The attorney bears the burden of establishing the reasonable value of the services rendered, based upon a showing of the hours reasonably expended and the prevailing hourly rate for similar legal work in the community." *Axos Bank*, 2026 WL 764476, at *7 (quoting *Loughlin v. Meghji*, 240 N.Y.S.3d 132, 135 (2d Dep't 2025)); *see also Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *8 (E.D.N.Y. Mar. 16, 2023) ("The applicant bears the burden to demonstrate reasonableness." (citation omitted)), *report and*

*recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).  Attorneys must support

"the application with contemporaneous time records and 'specify, for each attorney, the date, the

hours expended, and the nature of the work done.'" *Deutsche Bank Nat'l Tr. Co. v. Nickle*, No.

24-CV-7889 (NCM) (PCG), 2026 WL 788108, at \*10 (E.D.N.Y. Feb. 13, 2026) (quoting *Cruz v.

Loc. Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160-61 (2d Cir. 1994)), *report

and recommendation adopted*, 2026 WL 788011 (E.D.N.Y. Mar. 20, 2026).

As the United States Court of Appeals for the Second Circuit has explained, to guide the

Court's inquiry into what constitutes a reasonable hourly rate, courts should examine the following

factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the level of skill required to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d

Cir. 2008) (citation omitted); *see also Axos Bank*, 2026 WL 764476, at \*7 (stating that courts must

consider "such factors as the time, effort, and skill required; the difficulty of the questions

presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality;

and the contingency or certainty of compensation" (quoting *Vigo*, 994 N.Y.S.2d at 356)).

"The Court can assess the number of hours billed to determine if the number is reasonable,"

and the number of hours will be determined to be unreasonable "if it is found to be excessive,

duplicative, or unnecessary." *5316 Church Ave., LLC v. Yhun*, No. 14-CV-7376 (FB) (RER), 2018

WL 6204615, at \*2 (E.D.N.Y. July 18, 2018) (internal quotation marks and citations omitted),

*report and recommendation adopted as modified*, 2018 WL 6201709 (E.D.N.Y. Nov. 28, 2018).

13

"If the Court finds that some of the time [the attorney billed] was not reasonably necessary[,] it should reduce the time for which compensation is awarded accordingly." *Perry v. High Level Dev. Contracting & Sec. LLC*, No. 20-CV-2180 (AMD) (PK), 2022 WL 1018791, at *14 (E.D.N.Y. Mar. 16, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022). "Where time entries are vague, duplicative, or otherwise inadequate, a court may make an across-the-board reduction or percentage cut, in the amount of hours." *Id.* (internal quotation marks and citation omitted); *see also Studio Six Prods., Ltd. v. Sargsyan*, No. 19-CV-2685 (WFK) (MMH), 2024 WL 4309622, at *7 (E.D.N.Y. Sep. 26, 2024) (noting that district courts are authorized to make "across-the-board percentage cuts in hours 'as a practical means of trimming fat from a fee application'" (quoting *Green v. City of New York*, 403 F. App'x 626, 630 (2d Cir. 2010))), *report and recommendation adopted*, 2024 WL 4574142 (E.D.N.Y. Oct. 23, 2024). Indeed, courts have applied percentage reductions of up to fifty percent. *See Gonzalez v. Fresh Start Painting Corp.*, No. 18-CV-11124 (PMH), 2022 WL 3701096, at *6 (S.D.N.Y. Aug. 26, 2022) (collecting cases). "Inadequate documentation is another ground[] for reduction of a fee award." *Perry*, 2022 WL 1018791, at *14 (internal quotation marks and citation omitted).

When a party is awarded attorneys' fees, the party is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (citation omitted). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *U.S. Bank, N.A. v. Byrd*, 854 F. Supp. 2d 278, 288 (E.D.N.Y. 2012) (citation omitted). Indeed, costs must be substantiated with invoices or other documentation. *See 5316 Church Ave.*, 2018 WL 6204615, at *4 (citations omitted). "Court filing fees, process servers, printing and photocopying, messenger services, postage, telephone costs, transcripts, travel, transportation, meals and other

14

'[o]ut of pocket litigation costs are generally recoverable if they are necessary for the representation of the client.'" *Hanover Ins. Co. v. D'Angelo*, No. 13-CV-4301 (JMA) (ARL), 2018 WL 2729248, at *2 (E.D.N.Y. Mar. 23, 2018) (citation omitted), *report and recommendation adopted*, 2018 WL 2727878 (E.D.N.Y. June 6, 2018); *see also Duffy v. Ill. Tool Works, Inc.*, No. 15-CV-7407 (NGG) (SIL), 2024 WL 4275247, at *12 (E.D.N.Y. Sep. 24, 2024) (adopting report and recommendation, and noting that "[r]easonable expenses include court filing fees, process servers, postage and transcripts" (citing *Hanover Ins.*, 2018 WL 2729248, at *2)).  Only those costs that are tied to "identifiable, out-of-pocket disbursements" are recoverable. *See Moon v. Gab Kwon*, No. 99-CV-11810 (GEL), 2002 WL 31512816, at *8 (S.D.N.Y. Nov. 8, 2002) (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987)).

### 2.    Attorneys' Fees

Plaintiff requests $555,426.00 in fees.  Dkt. No. 177-3 at 12; Dkt. No. 177-4 ¶ 7.  There is no dispute that Plaintiff is entitled to attorneys' fees and costs. *See* Dkt. No. 184 at 2.  Defendants 366 Realty and Mizrahi, however, dispute the reasonableness of Plaintiff's fee application. *Id.* The undersigned now turns to the reasonableness of Plaintiff's requested fees and costs pursuant to the above framework.

#### a.    Reasonable Hourly Rates

##### i.    Attorneys

Although this action was commenced in 2017, Plaintiff's current counsel, McCarter & English LLP ("the Firm"), did not note any appearances on the record until November 28, 2022. Dkt. No. 66.  They nonetheless assert that their work on this case began in October 2022. Dkt. No. 177-4 ¶ 3.  Plaintiff provides a summary document listing eleven attorneys as having worked on this case: (1) Sheila Calello, partner; (2) Joseph Lubertazzi, Jr., partner; (3) Jessica Macarone, special counsel; (4) Danielle Weslock, partner; (5) John Stoelker, partner; (6) Stephanie Pisko,

15

associate; (7) MarcAnthony Bonanno, associate; (8) Tyler Mitchell, associate; (9) Ethan Whitaker, associate; (10) Gabriel Slamovits, associate; and (11) Jalen Williams, associate. *See* Dkt. No. 177-5 at 2. Only two attorneys have filed appearances on the docket: Ms. Macarone filed a substitution of attorney form on November 28, 2022, and Mr. Lubertazzi filed a notice of appearance on February 14, 2023. Dkt. Nos. 66, 68.

Plaintiff states that "[t]he primary attorneys who worked on this matter are Jessica Macarone, Jalen Williams, and [Joseph Lubertazzi, Jr.]." Dkt. No. 177-4 ¶ 6. To that end, Plaintiff provides biographical information for only Mr. Lubertazzi, Ms. Macarone, and Mr. Williams. *See id.* ¶ 6(a)-(c). The remaining eight attorneys "rendered services for discrete tasks as time demands required." *Id.* ¶ 7.

Given the recent case law in this district, the undersigned first recommends that the hourly rates proffered by Plaintiff are unreasonably high for Mr. Lubertazzi, Ms. Macarone, and Mr. Williams, respectively.

Mr. Lubertazzi, Jr. is a 1983 graduate of Seton Hall University School of Law and served as a law clerk to the Honorable Vincent J. Commissa, then-Chief Judge of the United States Bankruptcy Court for the District of New Jersey, for one year. *Id.* ¶ 6(a). Mr. Lubertazzi has been associated with the Firm since 1984, becoming partner in 1991. *Id.* Mr. Lubertazzi has acted as the Firm's Practice Group Leader and currently serves as Chairman of the Firm's Executive Committee. *Id.* Mr. Lubertazzi has "over forty years of experience in commercial litigation, primarily in the area of creditors' rights." *Id.* Given the length of this litigation, Mr. Lubertazzi contends that "[h]is hourly rate for services rendered on this matter commenced at $875.00 and is presently $990.00." *Id.* ¶ 6.

Ms. Macarone is a 2001 graduate of New York Law School. *Id.* ¶ 6(b). She has been associated with the Firm since 2003 and is special counsel. *Id.*; Dkt. No. 177-5 at 2. Ms. Macarone has "over 16 years of experience in commercial litigation, primarily in the area of creditors' rights in New York and New Jersey." Dkt. No. 177-4 ¶ 6(b). Ms. Macarone contends that her hourly rate began at $595.00 and is currently $745.00. *Id.* ¶ 6.

Mr. Williams is a 2024 graduate of Rutgers Law School. *Id.* ¶ 6(c). He became associated with the Firm upon graduation from law school, and has "approximately one year of experience in commercial litigation, including in the area of creditors' rights." *Id.* Mr. Williams contends that his hourly rate initiated at $425.00 and is presently $490.00. *Id.* ¶ 6.

Plaintiff fails to provide adequate information to demonstrate that its requested hourly rates for Mr. Lubertazzi, Ms. Macarone, and Mr. Williams "constitute the rates a reasonable client would be willing to pay in a competitive market under all of the relevant circumstances." *Bank of Am. v. Viders*, No. 10-CV-25 (DRH) (ARL), 2011 WL 4527419, at *3 (E.D.N.Y. July 26, 2011) (describing the Firm's request for attorneys' fees in a similar matter), *report and recommendation adopted*, 2011 WL 4440357 (E.D.N.Y. Sep. 23, 2011); *see also Alexander v. Amchem Prods., Inc.*, No. 07-CV-6441, 2008 WL 1700157, at *3 (S.D.N.Y. Apr. 3, 2008) (Sullivan, J.) ("Other than Counsel's conclusory assertion that a $600 rate is 'reasonable,' he has failed to submit *any* case authority or other evidence in support of the reasonableness of the proffered rate."). Since the Firm "has not provided any evidence of the prevailing market rates in this District, the Court has researched the prevailing market rates in the Eastern District of New York for lawyers in comparable cases involving real property disputes." *Melnick v. Press*, No. 06-CV-6686 (JFB) (ARL), 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (citations omitted). "Courts determine what constitutes a reasonable hourly rate through application of 'the forum rule,' which states that

17

'courts should generally use the hourly rates employed in the district in which the reviewing court sits.'" *Blue Castle (Cayman) Ltd. v. Astudillo*, No. 23-CV-3851 (LDH) (PK), 2024 WL 3813309, at *7 (E.D.N.Y. July 26, 2024) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)), *report and recommendation adopted*, Text Order, dated Sep. 27, 2024.

"The prevailing rates for experienced attorneys in the Eastern District of New York cases range from approximately $100 to $450, depending on experience level." *Yagui*, 2026 WL 1296762, at *18 (collecting cases); *see also Kimba Indus. Inc. v. Fortegra Specialty Ins. Co.*, No. 24-CV-1334 (JMW), 2026 WL 618037, at *6 (E.D.N.Y. Mar. 5, 2026) ("The updated 'forum rates in the Eastern District' after adjusting 'for inflation and market conditions' appears now to be in the '$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals.'" (citation omitted)); *Rubin v. HSBC Bank USA, NA*, 763 F. Supp. 3d 233, 243-44 (E.D.N.Y. 2025) ("I have rounded out the forum rates in the Eastern District to now be $450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals."). Moreover, "[a]ttorneys' fees awarded in the Eastern District of New York for cases concerning mortgages and promissory notes 'have tended to be lower than in other cases.'" *Blue Castle (Cayman)*, 2024 WL 3813309, at *7 (citation omitted) (awarding $150 hourly rate for an associate in a foreclosure action); *see also CIT Bank, N.A. v. Zisman*, No. 17-CV-2126 (CBA) (RER), 2023 WL 4060083, at *3 (E.D.N.Y. Mar. 23, 2023) (awarding $300 for an associate appearing as of-counsel admitted to practice in 2007 and $400 for a firm member appearing as of-counsel admitted to practice in 1973), *report and recommendation adopted*, 2024 WL 48708 (E.D.N.Y. Jan. 4, 2024); *United States v. Phillips*, No. 19-CV-5348 (AMD) (VMS), 2022 WL 256954, at *9 (E.D.N.Y. Jan. 7, 2022) (applying an associate hourly rate of $200 in a foreclosure action), *report and recommendation adopted*, 2022 WL 256576 (E.D.N.Y. Jan. 27, 2022); *E. Sav.*

18

*Bank, FSB v. Beach*, No. 13-CV-341 (JS) (AKT), 2014 WL 923151, at *13-14 (E.D.N.Y. Mar. 10, 2014) (adopting report and recommendation, and citing mortgage and promissory note cases where partners were awarded $250-275 per hour and associates were awarded $150-175 per hour). Higher rates, however, may be justified in more complex cases. *See Avail Holding LLC v. Ramos*, No. 19-CV-117 (BMC), 2020 WL 7186794, at *2 (E.D.N.Y. Dec. 7, 2020) (finding an hourly rate of $350 to be "eminently reasonable" for an associate with only six years of experience when the mortgage foreclosure action "was a hard-fought, heavily litigated action in which [plaintiff] raised a host of arguments which [defense counsel] successfully overcame"). "Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of "reasonable" attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'" *Houston v. Cotter*, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017) (citation omitted).

For Mr. Lubertazzi, Plaintiff provides no case law in support of his contention that Mr. Lubertazzi is entitled to an hourly rate between $875.00 and $990.00, which is exceptionally high for this district, especially in foreclosure actions. *See Fed. Nat'l Mortg. Ass'n v. C.Y. Gold LLC*, No. 24-CV-1314 (OEM) (RML), 2026 WL 1196137, at *8 (E.D.N.Y. Mar. 2, 2026) (reducing partner's hourly rate to $650 in a commercial foreclosure action), *report and recommendation adopted*, Text Order, dated Mar. 18, 2026; *see also Fed. Nat'l Mortg. Ass'n v. 204 Ellery St., LLC*, No. 23-CV-5343 (ENV) (RML), 2025 WL 1309875, at *10 (E.D.N.Y. Mar. 6, 2025) (reducing partner's hourly rate to $650 in a commercial foreclosure action), *report and recommendation adopted*, Text Order, dated Mar. 27, 2026; *Zisman*, 2023 WL 4060083, at *3 (finding, in foreclosure action, hourly rate of $300 reasonable for associate appearing as of-counsel admitted in 2007; $400 reasonable for firm member admitted in 1973; and $325 reasonable for attorney

admitted in 1997); *U.S. All. Fed. Credit Union v. M/V Kamara Fam.*, 691 F. Supp. 3d 646, 664 (E.D.N.Y. 2023) (finding, in foreclosure action, hourly rate of $450 reasonable for attorney with over forty years of experience).  Accordingly, the undersigned respectfully recommends that Mr. Lubertazzi's hourly rate should be reduced to $650.00.

For Ms. Macarone, Plaintiff again provides no case law in support of the proposed hourly rate between $595.00 and $745.00, which is likewise exceptionally high for this district.  The undersigned respectfully recommends that Ms. Macarone's hourly rate should be reduced to $450.00.  *See, e.g.*, *C.Y. Gold*, 2026 WL 1196137, at *8 (reducing associate's and senior practice attorney's hourly rates to $450 in a commercial foreclosure action); *204 Ellery St.*, 2025 WL 1309875, at *10 (reducing mid-level associates' hourly rates to $450 in a commercial foreclosure action); *Zisman*, 2023 WL 4060083, at *3 (finding hourly rate of $300 reasonable for associate appearing as of-counsel admitted in 2007); *M/V Kamara Fam.*, 691 F. Supp. 3d at 664 (finding hourly rate of $300 reasonable for attorney with over ten years of experience in foreclosure action).

Likewise, Plaintiff does not provide any case law support for Mr. Williams's requested hourly rate between $425.00 and $490.00, which is exceptionally high—particularly for a junior associate with limited experience.  *See* Dkt. No. 177-4 ¶ 6(c) (stating that Mr. Williams graduated in 2024); Dkt. No. 177-6 at 154 (showing that Mr. Williams began billing in this action on March 31, 2025).  Indeed, Mr. Williams has "approximately one year of experience in commercial litigation, including in the area of creditors' rights." *See* Dkt. No. 177-4 ¶ 6(c).  The undersigned respectfully recommends that Mr. Williams should be awarded an hourly rate of $150.00.  *See* *Rubin*, 763 F. Supp. 3d at 243-44.

Next, as to the eight attorneys for whom Plaintiff provides no biographical or background information, the undersigned recommends that the Court likewise reduce the hourly rates.

20

"[B]iographical information concerning the attorneys for whom charges were submitted . . . is required to evaluate experience levels." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015). Without this information, "[t]here is . . . no way the court can engage in any sort of comparative analysis as mandated under the 'lodestar' method." *Molefi v. Oppenheimer Tr.*, No. 03-CV-5631 (FB) (VVP), 2007 WL 538547, at *6 (E.D.N.Y. Feb. 15, 2007) (collecting cases); *see also Sanchez v. DPC N.Y. Inc.*, 381 F. Supp. 3d 245, 251 n.7 (S.D.N.Y. 2019) (declining to award any legal fees attributable to entries by a timekeeper for whom no biographical information was provided). "[T]he lack of detail does not assist in justifying the reasonableness of the hourly rates sought for each practitioner." *Kizer v. Abercrombie & Fitch Co.*, No. 12-CV-5387 (JS) (AKT), 2017 WL 9512408, at *8 (E.D.N.Y. July 24, 2017) ("[T]he Court is tasked with determining whether the hourly rates charged are reasonable. This requires a more thorough inquiry into each attorney's educational background and employment experience from the time of bar passage to the present."), *report and recommendation adopted*, 2017 WL 3411952 (E.D.N.Y. Aug. 9, 2017).

Significantly, Plaintiff fails to present "a detailed employment chronology" for *any* of these eight attorneys. *Id.* Nor does Plaintiff provide any indication that these attorneys have experience in foreclosure or related litigation. Plaintiff "make[s] no effort to compare the rates its counsel has charged to rates charged by counsel in similar cases or to rates approved by courts in this district." *Al Thani v. Hanke*, Nos. 20-CV-4765 (JPC), 20-CV-8181 (JPC), 2025 WL 1591379, at *5 (S.D.N.Y. June 5, 2025) (internal quotation marks and citation omitted) (noting that counsel failed to "describe the background or experience of the attorneys for whom [he] seeks fees, although it is well-settled that such information is required if the court is to engage in the necessary case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the

21

fee applicant's counsel"). Plaintiff reports that the eight attorneys for whom no background information was provided only rendered services "[f]rom time to time" for "discrete tasks as time demands required." Dkt. No. 177-4 ¶ 7. These were not the "primary attorneys" who worked on this matter. *See id.* ¶ 6. Indeed, seven of those eight attorneys billed eleven hours or less. *See* Dkt. No. 177-5 at 2. One associate, MarcAnthony Bonanno, billed 50.5 hours, *id.*, but Plaintiff curiously did not submit biographical information for Mr. Bonanno or any of these other attorneys. *See* Dkt. No. 177-4 ¶ 6.

Accordingly, Plaintiff has not met its "burden of demonstrating the reasonableness" of the eight attorneys' requested rates through supporting evidence. *See N.A.A.C.P. v. E. Ramapo Cent. Sch. Dist.*, No. 17-CV-8943 (CS) (JCM), 2020 WL 7706783, at *5 (S.D.N.Y. Dec. 29, 2020) (citation omitted). "[W]here a prevailing party fails to provide biographical information on an attorney for whom fees are sought, courts have discretion to lower the requested rate for purposes of the lodestar calculation and award fees at the lower end of the prevailing range." *Id.* (citations omitted); *see also Pilitz v. Inc. Vill. of Freeport*, No. 07-CV-4078 (ETB), 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested." (quoting *Artemide Inc. v. Spero Elec. Corp.*, No. 09-CV-1110 (DRH) (ARL), 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010), *report and recommendation adopted*, 2010 WL 5452077 (E.D.N.Y. Dec. 28, 2010))).

Therefore, the undersigned respectfully recommends that the hourly rate for partners Sheila Calello and Danielle Weslock be reduced to $450.00; and that the hourly rate for associates John

22

Stoelker,[6] Stephanie Pisko, MarcAnthony Bonanno, Tyler Mitchell, Ethan Whitaker, and Gabriel Slamovits be reduced to $150.00.  *See Rubin*, 763 F. Supp. 3d at 243-44.

### ii.    Staff Members

Plaintiff also seeks fees for ten staff members working on this case: (1) James Greenstone, research analyst; (2) Pamela Keyl, research analyst; (3) Bonnie Murch, paralegal; (4) Lisa Fenev, paralegal; (5) Linda Restivo, paralegal; (6) Magalie Desince, research analyst; (7) Emily Kim, paralegal; (8) Laura Harkins, paralegal; (9) Paul Connelly, research analyst; and (10) Gina Mancuso, paralegal.  *See* Dkt. No. 177-5 at 2.  Again, Plaintiff fails to provide any background information for the aforementioned paralegals or research analysts.  *See, e.g.*, *Nat'l Ass'n for the Specialty Food Trade, Inc. v. Construct Data Verlag AG,* No. 04-CV-2983 (DLC) (KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006) (lowering requested rates for paralegals and law clerks where movant failed to provide information on the timekeepers' background and experience, because the court could not assess the reasonableness of the rates requested), *report and recommendation adopted*, 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007).

The undersigned respectfully recommends that all staff members be awarded an hourly rate of $100.00.  *See Moreno v. Cap. Concrete NY Inc.*, No. 24-CV-3120 (NGG) (PK), 2025 WL 2555609, at *13 (E.D.N.Y. Sep. 5, 2025) (noting that a reasonable hourly rate for paralegal fees is $100-$150); *cf. Rubin*, 763 F. Supp. 3d at 245 (awarding $125 hourly rate for a paralegal with seven years of experience).

---

[6] Although Plaintiff reports on the summary chart that Mr. Stoelker, who billed 1.40 hours in this matter at an hourly rate of $550.00, is a partner, he was actually an associate at the time that he worked on this case. *See* Dkt. No. 177-5 at 2; Dkt. No. 177-6 at 3, 8.  Accordingly, the undersigned respectfully recommends that Mr. Stoelker's hourly rate be reduced in line with the associates.

23

**b.     Reasonable Number of Hours**

Here, Plaintiff seeks a total of $555,426.00 for 858.5 attorney hours and 62.7 paralegal and research analyst hours. *See* Dkt. No. 177-5 at 2.

The undersigned respectfully recommends that the Court find that the number of hours expended on this litigation to be unreasonably unnecessary, excessive, and duplicative.  As an initial matter, this foreclosure matter was overstaffed with eleven attorneys and ten professional staff members.  *See Houston*, 234 F. Supp. 3d at 404-07 (finding that a matter was overstaffed when ten different attorneys were assigned to the case).  As courts in this Circuit have noted, staffing a straightforward case "with 10 timekeepers is a recipe for disaster from a reasonable billing point of view.  Duplicate and triplicate review of even the most basic documents makes the billing unreasonable per se."  *Gonzalez*, 2022 WL 3701096, at *4.  When considering the reasonableness of counsel's claimed number of hours, "a district court has discretion to reduce requested attorneys' fees where the prevailing party assigned an inordinate number of attorneys to litigate the action.'"  *Chrysafis v. Marks*, No. 21-CV-2516 (GRB) (AYS), 2023 WL 6158537, at *6 (E.D.N.Y. Sep. 21, 2023) (collecting cases and finding across-the-board reduction of forty percent appropriate).

A review of the billing records reveals that there are myriad instances of duplicative and excessive billing.  For example, between December 19, 2024 and December 23, 2024, there are multiple billing entries from different attorneys regarding "revising letters" in connection with a letter to be filed with the Court on December 24, 2024. *See* Dkt. No. 177-6 at 84-85.  These entries total approximately 5.2 hours. *See id.*  But that December 24, 2024 filing is essentially a one-page letter that briefly addresses the undersigned's November 26, 2024 Report and Recommendation. *See* Dkt. No. 115.

24

Puzzlingly, Mr. Williams billed .60 hours—across two different days—for speaking "with Attorney from Eastern District of NY regarding the procedures to enter the court and also the requirements needed to keep your cellphone." Dkt. No. 177-6 at 167. All court procedures are available on U.S. District Court for the Eastern District of New York's website and, in any event, this type of administrative task is more appropriately completed by a paralegal or administrative assistant rather than an associate.

Another example of duplicative and excessive billing is observed in the entries regarding Plaintiff's motion to extend the notice of pendency. Ms. Macarone billed .70 hours for "[c]onsidering" and "attending to" issues regarding such a motion on August 29, 2025. *Id.* at 184. Mr. Williams spent 4.90 hours on September 3, 2025 drafting a notice of motion to extend the notice of pendency, a supporting affirmation, and a proposed order. *Id.* at 188. On September 4, 2025, Ms. Macarone spent .40 hours "[c]onsidering issues re: responses to inquiries related to draft motion to extend notice of pendency." *Id.* The next day, she spent another .30 hours "[f]urther considering issues re: motion for extension of notice of pendency." *Id.* On November 20, 2025, Ms. Calello spent .30 hours attending to "issues re: final judgment application and motion to extend notice of pendency." *Id.* at 200. Mr. Williams then spent another hour reviewing and making edits to the motion on November 24, 2025. *Id.* On November 25, 2025, Ms. Calello spent another .30 hours reviewing and revising the motion and considering timing of the motion. *Id.* Collectively, 7.9 hours of attorney time were spent on the motion. *See id.* at 184-200. This motion, however, was subsequently filed on December 8, 2025 as a one-and-a-half-page letter. Dkt. No. 172. The attorney hours spent on such a letter-motion are clearly excessive.

Likewise, between March 2025 and April 2025, three different attorneys collectively spent 16.7 hours researching or "considering" a statute of limitations issue in advance of Plaintiff's

25

motion for summary judgment.  *See* Dkt. No. 177-6 at 152, 153, 154, 158, 159, 160, 161.  Such time does not include the drafting of the portion of Plaintiff's motion discussing the statute of limitations, which was only three pages.  Dkt. No. 142-30 at 22-24.  These 16.7 hours are also excessive.

Additionally, Ms. Macarone spent 1.60 hours drafting a one-and-a-half-page letter opposing Defendants' request for an extension of time (filed at Dkt. No. 77).  *See* Dkt. No. 177-6 at 44.  Mr. Lubertazzi also spent .10 hours revising the objection.  *Id.*  These hours constitute an excessive amount of time used to oppose a request for an extension of time and, in any event, Defendants' request was granted.  *See* Minute Entry, dated May 3, 2023.

Other entries display Firm attorneys doing work more appropriate for a paralegal specialist or administrative assistant.  *See, e.g.*, Dkt. No. 177-6 at 34 (Mr. Bonanno billing for filing letter), 73 (Ms. Macarone billing for following up "with clerk re: status of filing"), 102 (Ms. Pisko billing for filing reply memorandum of law), 171 (Ms. Macarone billing for preparing a declaration of service via ECF).  Attorney billing for clerical tasks is not reasonable.  *See, e.g.*, *E. Sav. Bank v. Robinson*, No. 13-CV-7308 (ADS) (SIL), 2016 WL 3365091, at *10 (E.D.N.Y. May 9, 2016) (finding attorney billing for revising an affidavit of service and uploading it to ECF to be unreasonable), *report and recommendation adopted*, 2016 WL 3102021 (E.D.N.Y. June 2, 2016); *SAC Fund II 0826, LLC v. Burnell's Enters., Inc.*, No. 18-CV-3504 (ENV) (PK), 2022 WL 1519515, at *7-8 (E.D.N.Y. May 13, 2022) (recommending reduction where partner "performed tasks that could have been performed by a paralegal or associate such as following up with the title company on service of process issues relating to the estates"), *report and recommendation adopted as modified*, 2023 WL 5786820 (E.D.N.Y. Sep. 7, 2023), *aff'd*, 2024 WL 5153943 (2d Cir. Dec. 18, 2024).

Even when work was appropriately completed by professional staff members, some billing was excessive. For instance, Ms. Restivo, a paralegal, spent a total of four hours preparing to file, discussing the filing, and then filing the motion to fix indebtedness. *See* Dkt. No. 177-6 at 60. In addition, Ms. Kim, also a paralegal, spent .80 hours preparing and filing a notice of appearance for Mr. Lubertazzi, while Mr. Bonanno, an attorney, spent .30 hours editing that same notice of appearance. *Id.* at 22; *see also Robinson*, 2016 WL 3365091, at *10 (finding associate's .75 hours of billing for drafting and filing a notice of appearance to be unreasonable).

The above discussion is not exhaustive of the unreasonable billing seen in the Firm's records. Accordingly, an across-the-board percentage cut is appropriate here. *See, e.g.*, *Robinson*, 2016 WL 3365091, at *10 (recommending an across-the-board percentage cut to account for excessive or otherwise improper billing "[r]ather than scrutinizing the propriety of each individual time entry"); *H.C. v. Dep't of Educ.*, 71 F.4th 120, 126 (2d Cir. 2023) (upholding twenty percent reduction); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 64-65 (2d Cir. 2014) (upholding the district court's fifty percent across-the-board reduction of hours "because of concerns regarding 'unspecified conferences, telephone calls, email correspondence, and reviews'" (citation omitted)); *Chrysafis*, 2023 WL 6158537, at *9 (making an across-the-board reduction of forty percent of the hours billed by counsel); *Lopez v. 1923 Sneaker, Inc.*, No. 18-CV-3828 (WFK) (RER), 2021 WL 1845057, at *11-12 (E.D.N.Y. Mar. 5, 2021) (noting a thirty percent reduction of fees was warranted as the records demonstrated that "multiple employees billed for the same task," like reviewing emails and documents), *report and recommendation adopted*, 2021 WL 1259623 (E.D.N.Y. Apr. 6, 2021); *Reiter v. Maxi-Aids, Inc.*, No. 14-CV-3712 (SJF) (GRB), 2019 WL 1641306, at *5-6 (E.D.N.Y. Apr. 16, 2019) (concluding that because "[o]verstaffing of a case can lead to a reduction due to redundant or duplicative work performed," a reduction in the number of

27

hours billed was warranted as a partner, senior associate, junior associate, and paralegal were simultaneously participating in every aspect of the case, including "review[ing] and/or edit[ing]" documents); *Gen. Elec. Cap. Corp. v. Cutler*, No. 15-CV-4420 (PAE), 2015 WL 7444627, at *6 (S.D.N.Y. Nov. 23, 2015) (reducing attorneys' fees because "various time entries are vague, referring simply to 'consideration' of issues.  And some appear to reflect unnecessary work by high-level personnel on relatively quotidian projects"); *Am. Lung Ass'n v. Reilly*, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting forty percent of plaintiffs' lawyer's hours).

Here, the undersigned respectfully recommends an across-the-board reduction of thirty percent to account for billed hours the undersigned finds unreasonable.

***

In sum, based on the hourly rates set forth above and a thirty percent reduction of the hours billed on this matter, the undersigned respectfully recommends that Plaintiff be awarded $264,645.50 in attorneys' fees.  The below chart further details the recommended fee award.

| | Reasonable Hourly Rate | Reasonable Hours | Lodestar |
|---|---|---|---|
| Sheila Calello, Partner | $450.00 | 7.70 | $3,465.00 |
| Joseph Lubertazzi, Jr., Partner | $650.00 | 58.87 | $38,265.50 |
| Jessica Macarone, Special Counsel | $450.00 | 460.74 | $207,333.00 |
| Danielle Weslock, Partner | $450.00 | .49 | $220.50 |
| John Stoelker, then-Associate | $150.00 | .98 | $147.00 |
| Stephanie Pisko, Associate | $150.00 | .56 | $84.00 |
| MarcAnthony Bonanno, Associate | $150.00 | 35.35 | $5,302.50 |
| Tyler Mitchell, Associate | $150.00 | 3.78 | $567.00 |
| Ethan Whitaker, Associate | $150.00 | 7.63 | $1,144.50 |
| Gabriel Slamovits, Associate | $150.00 | 4.55 | $682.50 |
| Jalen Williams, Associate | $150.00 | 20.30 | $3,045.00 |
| James Greenstone, Research Analyst | $100.00 | .49 | $49.00 |
| Pamela Keyl, Research Analyst | $100.00 | .21 | $21.00 |
| Bonnie Murch, Paralegal | $100.00 | 14.21 | $1,421.00 |
| Lisa Fenev, Paralegal | $100.00 | .70 | $70.00 |
| Linda Restivo, Paralegal | $100.00 | 12.53 | $1,253.00 |
| Magalie Desince, Research Analyst | $100.00 | .14 | $14.00 |
| Emily Kim, Paralegal | $100.00 | .56 | $56.00 |
| Laura Harkins, Paralegal | $100.00 | 9.38 | $938.00 |
| Paul Connelly, Research Analyst | $100.00 | .49 | $49.00 |
| Gina Mancuso, Paralegal | $100.00 | 5.18 | $518.00 |
| **Total Fees** | | | **$264,645.50** |

### 3.    Costs

Plaintiff seeks costs totaling disbursements of $11,628.08.  Dkt. No. 177-3 at 12; Dkt. No. 177-4 ¶ 8; Dkt. No. 177-6.  Plaintiff contends that these costs are related to "a title search, filing fees, and service of process."  Dkt. No. 177-3 at 12.  Reviewing the Firm's invoices to Plaintiff, the requested costs are broken down as follows: (1) $4,720.25 for "Library Research"; (2) $225.90 for photocopies; (3) $1,562.00 for color printing; (4) $323.60 for "Printing W/Slip Sheets, Staples"; (5) $16.25 for velo binding; (6) $0.90 for "PDF Conversion"; (7) $36.05 in filing fees for a "successive notice of pendency in the Kings County Clerk's Office"; (8) $69.36 in filing fees for "record[ing] a corrected Assignment of Mortgage with the NYC Register"; (9) $351.34 for FedEx deliveries; (10) an additional $285.61 in postage; (11) $3,642.98 for process servers; and (12) $393.84 for limousine services.  *See* Dkt. No. 177-6.  Although these costs are included in the Firm's billing records filed on the docket, no actual receipts are provided for any of the aforementioned items.

As previously stated, "a court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"  *Saleh v. Pretty Girl, Inc.*, No. 09-CV-1769 (RER), 2022 WL 4078150, at *35 (E.D.N.Y. Sep. 6, 2022) (citation omitted); *see also Onewest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB) (RER), 2016 WL 11395013, at *6 (E.D.N.Y. Jan. 19, 2016) (noting that "[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients are recoverable" (citing *LeBlanc-Sternberg*, 143 F.3d at 763)), *report and recommendation adopted*, 2016 WL 1069951 (E.D.N.Y. Mar. 18, 2016).  "Courts are also permitted to deduct requested costs where documentation is insufficient."  *N.Y. Ass'n for Ret'ed Child. v. Cuomo*, Nos. 72-CV-356 (RJD), 72-CV-357 (RJD), 2019 WL 3288898, at *8 (E.D.N.Y. July 22, 2019) (citing *Rotella v. Bd. of Educ.*, No. 01-CV-434 (NGG), 2002 WL 59106, at *5

(E.D.N.Y. Jan. 17, 2002) (reducing costs by fifty percent where plaintiffs billed for "copying costs," "courier costs," "long distance telephone," and "postage costs" in lump sums without "provid[ing] further breakdowns, descriptions or even dates indicating how and when these costs were incurred")).

Here, on one hand, the costs for photocopies, printing "W/Slip Sheets, Staples," velo binding, filing fees, FedEx deliveries, postage, service of process, and "PDF Conversion" appear reasonable and are generally supported by the record. *See, e.g.*, *Fabric Selection, Inc. v. A & T Trading US, Inc.*, No. 20-MC-864 (ARR) (VMS), 2021 WL 811371, at \*7 (E.D.N.Y. Feb. 5, 2021) (collecting cases and noting that costs for process servers, certified mailings, and other service fees are compensable), *report and recommendation adopted*, 2021 WL 810340 (E.D.N.Y. Mar. 3, 2021); *Ctr. for Popular Democracy v. Bd. of Governors. of the Fed. Rsrv. Sys.*, No. 16-CV-5829 (NGG) (VMS), 2021 WL 4452202, at \*15 (E.D.N.Y. Aug. 20, 2021) (adopting report and recommendation, and collecting cases and finding costs for, *inter alia*, service of process, filing fees, postage, copying and printing, and courier fees compensable).

On the other hand, the Firm seeks costs that are devoid of any support in the record. For instance, with respect to the $4,720.25 in costs for "Library Research," the Firm claims such costs for nearly every month that they worked on the litigation in varying amounts between $0.60 and $2,265.60. *See* Dkt. No. 177-6. Plaintiff provides no explanation of what constitutes these alleged "Library Research" costs—whether it be for an electronic legal research database or something else—or why such costs are reasonable in a commercial foreclosure action led by experienced counsel. Thus, there is no basis to award costs for such vague research costs. *See, e.g.*, *Samsonite IP Holdings v. Shenzhen Liangyiyou E-Commerce Co., LTD*, No. 19-CV-2564 (PGG) (DF), 2021 WL 9036273, at \*17 (S.D.N.Y. Apr. 26, 2021) (recommending that plaintiff's request for costs for

"library research," "translation services," and "professional services" be denied because the request was vague and plaintiff did not provide receipts or explain why such costs were reasonably incurred), *report and recommendation adopted*, 2023 WL 8805645 (S.D.N.Y. Dec. 20, 2023); *Reiter*, 2019 WL 1641306, at *7 (reducing costs for Westlaw research because the record provided no information as to who performed the research or its scope, and declining to award costs for numerous travel and meal costs where plaintiff provided no explanation as to why they were reasonable or necessary); *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, No. 14-CV-6911 (VEC) (JLC), 2016 WL 658310, at *11 (S.D.N.Y. Feb. 17, 2016) (recommending reducing costs for library research and postage because a review of the billing records demonstrates no relevant research or mailing activities on or around the stated dates), *report and recommendation adopted*, 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016).

Plaintiff also requests $1,562.00 for "Color Printer," *see* Dkt. No. 177-6 at 63, 138, 164, 172, but provides no information about what documents were printed in color, how many pages were printed in color, or why color printing was necessary in light of the other expenses for photocopying and other types of printing. In short, Plaintiff has not "provided sufficient information regarding the purpose of the copies." *Encarnacion v. Spinner*, No. 9:15-CV-1411 (BKS) (ML), 2023 WL 2785745, at *7 (N.D.N.Y. Apr. 5, 2023) (citation omitted).

Finally, on August 4, 2025, the Firm billed $393.84 for a limousine service—although there was no Court appearance that day. *See* Dkt. No. 177-6 at 185. Although transportation costs are ordinarily recoverable when adequately supported by the record, *see Hanover Ins.*, 2018 WL 2729248, at *2, here it is entirely unclear what the limousine services were used for and how they are connected to the Firm's representation of Plaintiff.

Accordingly, the undersigned respectfully recommends that Plaintiff be awarded $4,951.99 in costs—constituting the requested expenses for photocopies, printing "W/Slip Sheets, Staples," velo binding, filing fees, FedEx deliveries, postage, service of process, and "PDF Conversion"— and that the remainder of Plaintiff's requested costs be denied.

## III.    Conclusion

For the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion be granted in part and denied in part, to wit: that, as discussed above, a Judgement of Foreclosure and Sale be entered in a form substantially similar to that proposed by Plaintiff at Dkt. No. 189, and that attorneys' fees in the amount of $264,645.50 and costs in the amount of $4,951.99 be awarded to Plaintiff.

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service by June 18, 2026.

Any objections to this Report and Recommendation must be filed within fourteen (14) days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Matsumoto.  The "failure to object timely to a [magistrate judge]'s report operates as a waiver of any further judicial review of the [magistrate judge]'s decision."  *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d. Cir. 1989)).  Indeed, "a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point."  *Stevens v. Duquette*, No. 22-1571, 2024 WL 705954, at *1 (2d Cir. Feb. 21, 2024) (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003)).  Accordingly,

the failure to file objections within this timeframe or specify the particular issues to be reviewed precludes further review of this Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Frego v. Kelsick*, 690 F. App'x 706, 709 (2d Cir. 2017) (appellate review barred because plaintiff failed to object to the magistrate judge's report and recommendation pertaining to the claim on which plaintiff now seeks to appeal (citing *Caidor*, 517 F.3d at 604)).

Dated:        Brooklyn, New York
              June 17, 2026                    **SO ORDERED.**

                                               */s/ Joseph A. Marutollo*
                                               JOSEPH A. MARUTOLLO
                                               United States Magistrate Judge